**Jose Armando DeLEON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–09–00319–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 2010.

Ralph R. Martinez, Houston, for Appellant.

Bill R. Turner, Bryan, John Brick, Huntsville, for Appellee.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and CHRISTOPHER.

**OPINION**

ADELE HEDGES, Chief Justice.

Appellant, Jose Armando DeLeon, appeals from his conviction for indecency with a child by sexual contact. A jury found appellant guilty and assessed punishment at fourteen years in prison. In two issues on appeal, appellant contends that he received ineffective assistance of counsel in the guilt/innocence and punishment phases of the trial. We affirm appellant's conviction; however, finding that appellant received ineffective assistance of counsel in the punishment phase, we remand for a new punishment proceeding.

## I. Background

Complainant, a female less than seventeen years old, made an outcry statement to her mother in January 2007 that appellant, the uncle of her mother by marriage, had inappropriately touched her on several occasions. At trial, complainant testified that the first incident with appellant occurred in October 2004 when the family was living in Tyler, Texas, and she was in the fourth grade. Her brother had just been born, and her mother was in the hospital. Appellant, his wife, and youngest daughter travelled from their home in Bryan, Texas to see the baby. Complainant testified that appellant rubbed her "upper leg" with his hand while she was sitting on the couch watching television in the living room. The only other people in the apartment at the time were her younger sister and appellant's daughter, both of whom were in different rooms. She recalled that she did not move or say anything because she was frightened. When he stopped, he got up from the couch, and nothing else happened on this occasion.

The next incident occurred during the fall of her fifth grade year, after her family had moved back to Bryan in 2005. She was at appellant's house after school, sitting on a couch in the living room watching television. Appellant sat next to her and touched her above her clothing on her "bottom front area" or "private part" and then told her not to tell. Subsequently, appellant continued to touch her private part "every chance that he got," on a couch in the living room, while her sister and his daughter were in his daughter's room. Complainant further explained that anyone in appellant's daughter's bedroom could not see her and appellant on the couch. The incidents continued in appellant's house on the couch through the fifth grade and into the sixth grade in 2006. Complainant stated that appellant became

"worse" during the summer of 2006, and he would unzip her shorts and "stick his hands in" her shorts, although not beneath her underwear. She also testified that he repeated a threat: "One day I'll get you good." The last touching occurred the week of her twelfth birthday in December 2006. Soon thereafter, in January 2007, complainant told her mother about appellant's touching her.

Complainant said that she didn't understand why appellant was touching her, and it made her angry. She further stated that during this time period she argued with her mother more than she had previously. On cross-examination, complainant acknowledged that she did not tell anyone except the prosecutor that appellant had touched her inside her clothing and made threats to her.

Complainant's mother recounted the family's move in 2002 from Bryan to Tyler and return to Bryan in 2005. After their return, both she and her husband were at work when school ended for her daughters, so they arranged for extended family to pick them up from school and either drop them off at the Boys and Girls Club or appellant's house. She started to notice problems in complainant's behavior in 2005, during the fall of her fifth grade year. Complainant became angry and disobedient at home and in public. Around December 2005, complainant's behavior was so rebellious that she was suspended from the Boys and Girls Club. The mother further testified that when she was complainant's age, she had acted similarly as a result of having been molested. Based on her own experience, she came to suspect that complainant may have also been molested. She therefore began to question complainant about possible molestation. Over the next year, complainant's mother made this inquiry about "half a dozen" times. By December of 2006, com-

plainant was having so much difficulty with her family that she was kept at home through the holidays instead of being babysat outside of the home.

Detective Loup of the Bryan Police Department, the primary investigator in Bryan for sex crimes and lead detective assigned to this investigation, testified regarding his five years experience working on sex crimes as well as his specialized training and education. He described this case as a delayed outcry, which he said was common for child victims. Further, he noted that there was no need to look for physical evidence since this was an indecent contact case, and nothing suggested otherwise. The first step in the investigation was to have the complainant interviewed by a forensic interviewer at Scotty's House, a child advocacy center. After observing that interview, Loup interviewed several other people, including appellant via interpreter, one of appellant's daughters, and complainant's parents. In his interview, appellant denied the accusations against him. Loup stated that based on his investigation, the last offense occurred at appellant's home and was committed by appellant.

Cheryl Mikeska, a licensed professional counselor, testified that she has fifteen years experience working with children. She has counseled over a hundred children who had been sexually abused. Her education includes a bachelor's degree in psychology and a master's degree in counselor education. She described the symptoms and behavioral characteristics of sexual abuse victims. She further described the symptoms and behavior complainant had exhibited. Although she acknowledged that complainant's behavior could have been caused by something other than sexual abuse, she opined that there were clear indicators of her having been sexually abused.

The defense called appellant's youngest daughter as a witness. She is a second cousin to complainant and was seventeen years old at the time of trial. She recounted the trip to Tyler to visit complainant's family when the baby was born. She only recalled being in complainant's parent's bedroom when the baby was in the apartment and did not notice any unusual behavior from complainant. Appellant's daughter also testified to her long history of babysitting complainant and siblings. She disputed complainant's description of her home and described her bedroom as being only "two steps" from the living room, close enough that she could see people sitting on the couch from her bedroom door. She testified that she was always around complainant when she was at her house and that complainant was never alone with appellant. She asserted that complainant had accused appellant because she wanted attention from her parents. She explained that complainant was treated worse than her other siblings because she had a different father. Finally, she claimed that complainant would lie to her parents and her on occasion about "any other little thing."

At the punishment phase of the trial, defense counsel opened with a plea to the jury to recommend probation for appellant. In his opening statement, he also mentioned that appellant was a legal resident of the United States, coming originally from Mexico. The defense then called Charlie Russ, a Brazos County probation officer. He described the treatment for sex offenders on probation and the protections in place for the community against the potential danger posed by sex offenders on probation. Also, he testified as to the greater availability of treatment to those on probation versus those jailed or on parole. On cross-examination, the prosecutor elicited considerable testimony from Russ regarding his opinions on the psychology of sex offenders, including his conclusion that: "If you want to protect the public, then you put them in a situation where they can't have access to children."

The jury convicted appellant of indecency with a child by sexual contact and assessed punishment at fourteen years' confinement.

## II. Standards of Review

In his first issue, appellant contends that he was denied effective assistance of counsel during the guilt/innocence phase of trial. In his second issue, appellant contends that he was denied effective assistance during the punishment phase. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In reviewing an ineffective assistance claim, an appellate court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged Strickland test, in order to demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).

■ Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.* In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim.App.1998). This is particularly true when the alleged deficiencies are matters of omission and not of commission revealed in the record. *Id.* A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State,* 66 S.W.3d 528, 542 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *Alexander v. State,* 282 S.W.3d 701, 705 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd).

### III. Counsel's Performance During Guilt/Innocence Phase

As stated, appellant asserts in his first issue that he received ineffective assistance during the guilt/innocence phase of trial. Specifically, he contends that counsel was deficient in that he failed to object to: (1) complainant's mother's testimony that she (the mother) had been molested as a child; (2) the mother's testimony that complainant exhibited symptoms of having been molested; (3) the expert testimony of Cheryl Mikeska that complainant was sex-ually abused; and (4) the testimony of Detective Loup that appellant had indecent contact with complainant.

### A. Mother's Testimony Regarding Prior Abuse

■ Appellant first complains about complainant's mother's testimony that she was sexually abused as a child. Specifically, when the prosecutor asked the mother why she felt something was "going on" with complainant, the mother responded that complainant was acting the same way that the mother had when she [the mother] was molested as a child. In his brief, appellant contends that this testimony was irrelevant because it did not involve either complainant or appellant, or alternatively, that it was prejudicial because it "was offered to inflame the passion and sympathy of the jury to both the witness and her daughter." He further asserts that trial counsel's performance was deficient because he did not object to this testimony. However, even assuming that appellant is correct regarding the admissibility of this evidence, the record is silent as to why counsel did not object. There may have been strategic reasons for counsel to decline to object even to inadmissible evidence. *See Thompson,* 9 S.W.3d at 814 (declining to find that representation was either effective or ineffective given lack of explanation in the record for failure to object to hearsay); *McKinny v. State,* 76 S.W.3d 463, 473–74 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (discussing various reasons why criminal defense counsel might strategically decide not to object to inadmissible evidence).[1] Accordingly, we cannot say on this record that counsel's

1. For example, during his cross-examination, trial counsel pressed the mother on the fact that prior to complainant's outcry statement, the mother was frequently asking complainant whether someone had been "touching" her. Counsel may have intended to suggest that the mother's own prior experience may have predisposed her to see symptoms in her daughter and may have lead her to cause complainant to fabricate her outcry statement.

performance was deficient because he failed to object to the mother's testimony that she had been molested as a child.

### B. Mother's Opinion Testimony

■ Appellant next contends that counsel should have objected to the mother's testimony that complainant's behavioral problems "made sense" after the mother learned of the molestation of complainant. Appellant specifically asserts that this testimony was inadmissible because the mother was not qualified as an expert on such matters. However, it does not appear from the record that this testimony was presented as expert testimony; instead it appears to have been only lay opinion evidence based on the mother's own observations and prior experience. *See generally* Tex. Rule Evid. 701; *Bargas v. State,* 252 S.W.3d 876, 897–98 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Appellant offers no argument as to whether this evidence would have been properly admitted as lay opinion evidence. Accordingly, he has not met his burden to show that counsel's performance was deficient under the first prong of Strickland. *See Alexander,* 282 S.W.3d at 705.

### C. Expert's Testimony

■ Appellant next insists that counsel should have objected to Cheryl Mikeska's expert opinion that complainant had been sexually assaulted. Generally, expert testimony is admissible if it assists the jury in intelligently determining an issue but does not decide the issue for the jury. *See Duckett v. State,* 797 S.W.2d 906, 914 (Tex.Crim.App.1990), *disapproved on other grounds, Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993); *Drake v. State,* 123 S.W.3d 596, 606 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Expert testimony that identifies certain physical or behavioral manifestations of sexual abuse

and relates those characteristics to the complainant is admissible even if the complainant has not been impeached. *Yount v. State,* 872 S.W.2d 706, 708–09 (Tex. Crim.App.1993). However, "[e]xpert testimony does not assist the jury if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations." *Schutz v. State,* 957 S.W.2d 52, 59 (Tex. Crim.App.1997) (quoting *Yount,* 872 S.W.2d at 708).

In her testimony, Mikeska highlighted certain behavioral characteristics commonly exhibited by child abuse victims, including difficulty sleeping and eating, low self esteem, depression, poor interpersonal relationships, and isolation. She further spoke specifically regarding certain of those characteristics displayed by complainant. The following exchange then occurred between the prosecutor and Mikeska:

Q. And when you have these symptoms, what is your impression or diagnosis of [complainant]?

A. My impression with [complainant], particularly, is that there are clear indicators of her having been sexually abused.

Contrary to appellant's suggestion, this testimony did not offer an ultimate conclusion regarding complainant's truthfulness in this case. Mikeska merely stated that complainant exhibited the behavioral characteristics of a child who had been sexually abused. Expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused has been held admissible in similar cases. *See Perez v. State,* 113 S.W.3d 819, 832 (Tex.App.-Austin 2003, pet. ref'd) (citing *Hitt v. State,* 53 S.W.3d 697, 707 (Tex. App.-Austin 2001, pet. ref'd), *Vasquez v. State,* 975 S.W.2d 415, 417 (Tex.App.-Austin 1998, pet. ref'd), *Yount,* 872 S.W.2d at

709, and *Cohn,* 849 S.W.2d at 819–21), *overruled on other grounds, Taylor v. State,* 268 S.W.3d 571, 578 (Tex.Crim.App. 2008); *see also Jiron v. State,* No. 01–07–00441–CR, 2008 WL 1904068, at *3 (Tex. App.-Houston [1st Dist.] May 01, 2008, no pet.) (citing *Perez* ). Accordingly, counsel was not ineffective for failing to object to Mikeska's testimony. *See, e.g., Ex parte White,* 160 S.W.3d 46, 53 (Tex.Crim.App. 2004) (holding counsel was not ineffective for failing to object to admissible evidence).

### D. Detective's Testimony

■ Next, appellant contends that his counsel was ineffective for failing to object to Detective Loup's testimony, which "constituted an impermissible opinion as to the guilt or innocence of an individual." The expression of guilt or innocence in any case is a conclusion to be reached by the jury based upon the instructions given them in the court's charge, coupled with the evidence admitted by the judge through the course of the trial. *Taylor v. State,* 774 S.W.2d 31, 34 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd). No witness is competent to voice an opinion as to guilt or innocence. *Boyde v. State,* 513 S.W.2d 588, 590 (Tex.Crim. App.1974). After explaining how a typical sexual assault of a child investigation is conducted, including the interviewing of the child, Loup responded to the prosecutor's additional questioning as follows:

Q. And in this case, based upon your investigation, did you determine where the indecency offense had occurred?

A. Yes. The last offense occurred at ... the suspect's home. It's in Bryan, Brazos County.

Q. Who, based upon your investigation, was the suspect or the person who committed this indecent contact with [complainant]?

### A. Jose DeLeon.

The prosecutor's questioning was improper. The prosecutor not only asked Detective Loup who he developed as a suspect during the course of the investigation, he also asked who committed the offenses and where the last offense occurred. *See Huffman v. State,* 691 S.W.2d 726, 730 (Tex.App.-Austin 1985, no pet.) (finding court erred in permitting prosecutor to ask deputy sheriff if he felt crime had been committed where appellant claimed he shot victim in self defense); *see also Lovell v. State,* No. 12–04–00291–CR, 2006 WL 1916950, at *3 (Tex.App.-Tyler Nov. 22, 2006, pet. ref'd) (mem. op., not designated for publication) (finding trial court erred in permitting prosecutor to ask police officer whether, based upon his investigation, officer believed defendant had "violated the law," as this was merely an expression of opinion that officer believed defendant was guilty).

However, even assuming that counsel's performance fell below an objective standard of reasonableness due to his failure to object to this testimony, in order to be entitled to a reversal for ineffective assistance of counsel under *Strickland,* appellant must further demonstrate that but for counsel's error, the result of the proceeding would have been different. *See Thompson,* 9 S.W.3d at 812. We begin our analysis of the second *Strickland* prong by noting that Detective Loup did not directly state that he believed appellant was guilty; he merely indicated that his investigation pointed to appellant as the perpetrator. Loup was the first witness in the case, and apparently the prosecutor simply wanted to establish the circumstances under which appellant was arrested, *i.e.,* to "set the scene" for the witnesses to come. In addition, the prosecutor's questioning was so garbled that it was unlikely to have left a clear im-

**384**

pression regarding Loup's personal opinions on the matter. Furthermore, the prosecutor did not continue the line of questioning or emphasize it in any way; he did not even mention it during closing argument. Instead, the prosecutor's primary focus in both the case-in-chief and closing argument was on complainant's credibility. For these reasons, we decline to find ineffective assistance of counsel under *Strickland* based on this one isolated failure to object to potentially inadmissible testimony. *See generally Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim. App.1984) (explaining that isolated failures to object to improper evidence generally do not constitute ineffective assistance of counsel); *Moore v. State,* 4 S.W.3d 269, 275 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (same). Finding none of appellant's assertions of ineffective assistance in the guilt-innocence phase to have merit, we overrule appellant's first issue.

## IV. Counsel's Performance During Punishment Phase

In his second issue, appellant contends that he received ineffective assistance of counsel during the punishment phase of trial. Specifically, he alleges that counsel was ineffective for (1) injecting national origin by pointing out that he is a legal resident in the United States from Mexico; (2) calling a probation officer as an expert witness who then gave damaging testimony; and (3) failing to object to the prosecutor's questions which elicited the damaging testimony. We will begin by reviewing the testimony of the probation officer.

During the punishment phase, appellant called Charlie Russ, a Brazos County probation officer, to the stand. On direct examination, Russ testified that when sex offenders are placed on probation, they receive treatment to learn to control their behavior, including "on how to push away any type of temptations or desires," and "to remove themselves from high-risk situations." He further stated that the hope was that the offender in question would "gain enough information to where they will apply it to the rest of their life and they will have the necessary abilities to remove themselves from situations that could trigger sexual behavior. It is just—it is education, and the importance of it is to prevent further sexual behavior." Additionally, on re-direct examination, Russ explained that a sex offender on probation would definitely receive counseling and that within the prison system, as opposed to the probation system, offenders typically do not receive the same level of counseling.

On cross-examination by the prosecutor, however, Russ testified as follows:

Q. If in a particular case the facts were to show that what a person was convicted for was a situation where either through opportunity or through planning it was in a position where nobody else would see it, it was secretive; unless a child talked nobody would know. Is that risk still there if the people around aren't trying to prevent that?

A. Sure. That risk will always be there. The risk will never disappear. Regardless if they get alone with the child, regardless if there are other adults in the house, the risk remains. [¶] The risk is in the brain. It's up here. It's the desire. You can put a person in prison, you can do anything you want to them. You cannot get rid of the deviancy, the sexual desire, in any offender. [¶] Sexual behavior is natural, but when it becomes deviant, that is when we get worried. Once it is with them, it doesn't disappear. That is the purpose of treatment. [¶] Punishment—I don't care what kind of punishment you give some-

body, it never forces the issues out of their brain. They will always have some kind of deviant sexual desire, and they will always be at risk to the community. That is just the way it works.

He subsequently expanded on this line of testimony on re-cross:

Q. Now rehabilitation of sex offenders: Are they ever rehabilitated to the point where the risk is gone?

A. No. Absolutely not. The risk will always be there. It may be minimized or lessened, but the risk will always remain because we don't know—I don't know what anybody here is thinking. We can never assume that we know what a sex offender is thinking. [¶] The risk is this: they were sex offenders before they committed the offense. So we don't know what he is thinking, what they're planning. We can give them treatment, we can do all the things that are required by law; but we can't see up here, so we can never truly predict what is going to happen from day one to day two. [¶] You have got to assume all the risk because you have heard story after story, "I never thought he would do this; I never thought my grandfather would do this; I never thought my dad would do this." [¶] So you never, ever push out the risk. You always assume the risk is great. As long as you assume the risk is great, then hopefully that is going to create enough protection to prevent other children from being impacted one way or the other. You just don't know. [¶] I can have guys that do everything perfectly, but up here they're still having sexual fantasies of molesting two-year-old girls or two-year-old boys. Just because you succeed well in probation does not remove the risk,

Russ went on to list various problems he's encountered as a probation officer dealing with sex offenders. For example, he described one particular 75 year-old probationer who had a room in his home with "little girl dresses and some dolls and a little bed made up for them." He further described how some offenders on probation have "toys and video games so they can invite the neighbors' little kids to come over." He concluded that: "If you want to protect the public, then you put them in a situation where they can't have access to children."

█ This testimony was particularly damaging to appellant's prospects for probation or a short prison sentence. Appellant contends that he received ineffective assistance of counsel because counsel failed to object to this evidence and, in fact, presented Russ as a witness. Generally, when a defendant contends that his or her counsel was ineffective because he or she failed to object to evidence, the defendant must establish that such evidence was in fact inadmissible. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex.Crim.App.2002). There has been no showing here, either at trial or on motion for new trial, as to whether Russ was qualified to give expert opinion testimony on these matters. However, whether or not Russ was qualified, appellant's trial counsel was deficient in failing to object to the highly inflammatory testimony and for calling Russ to the stand in the first place. *See Mares v. State*, 52 S.W.3d 886, 892–93 (Tex.App.-San Antonio 2001, pet. ref'd) (holding counsel was deficient where counsel called probation officer as witness and then failed to object when she opined that a person in the defendant's situation would not make a good candidate for probation); *Jackson v. State*, 857 S.W.2d 678, 683 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) (finding counsel was deficient for, among other things, calling Child Protective Services caseworker as witness who then "raised questions" concerning possible child

abuse); *see also Ex parte Hill,* 863 S.W.2d 488, 489 (Tex.Crim.App.1993) (holding counsel was deficient for calling alibi witness who had already pleaded guilty to same crime). Counsel should have known how Russ was going to testify on these matters. There could have been no strategic reason for producing and permitting such damning testimony. *See Andrews v. State,* 159 S.W.3d 98, 102 (Tex.Crim.App. 2005) ("[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did.").[2]

Turning to the second *Strickland* prong, it is difficult to assess exactly what impact the testimony had on the jury. Without question, indecency with a child is a heinous offense, and juries have significant latitude in the punishment they may assess for such a crime. However, given the nature of this testimony and the emphasis placed upon it (Russ's testimony took up 36 record pages of 71 total pages of testimony in the punishment phase, and he was the only witness who could be considered an expert presented during that phase), it is likely that it had an effect on the jury's

assessment of punishment. In other words, there is a reasonable probability, *i.e.,* one sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for counsel's deficient performance. *See Andrews,* 159 S.W.3d at 102. The jury declined to recommend probation, as appellant had requested, and instead assessed punishment of fourteen years imprisonment out of a range of between two years and twenty years. *See* Tex. Penal Code §§ 12.33(a) (providing punishment range for second degree felonies), 21.11(a)(1) (classifying indecency with a child by contact as a second degree felony).[3] Accordingly, we find that trial counsel was ineffective, and appellant is therefore entitled to a new hearing on punishment. *See Mares,* 52 S.W.3d at 892–93 (remanding for new punishment phase where counsel called witness who gave damaging testimony regarding defendant's candidacy for probation and failed to object to that testimony).

Because we find that counsel was ineffective for presenting Russ as a witness and failing to object to the prosecutor's line of questions, we need not consider appellant's other punishment phase argument, *i.e.,* that counsel was ineffective for

---

**2.** The dissent suggests that we are holding that "no competent attorney would have called a probation officer as a witness during the punishment phase of trial" and that doing so would be ineffective assistance as a matter of law. This assertion is incorrect. As indicated in the text above, defense counsel either knew or should have known how his own witness was going to testify on the very matter on which he called the witness to testify. Under the facts of this case, defense counsel was ineffective for producing this witness and failing to object to his damaging testimony.

**3.** The dissent states that our determination of prejudice appears to rest on two grounds: the volume of Russ's testimony relative to the entirety of the punishment phase record and

the jury's stiff punishment assessment. This assertion is incorrect. The primary basis for our determination of prejudice, as set forth in the text above, is the damaging nature of Russ's testimony. The comparative volume of that testimony and the severity of the punishment are only additional factors that support the conclusion that the testimony was in fact quite damaging. We certainly do not suggest that a jury's assessment of a long prison sentence for a sexual offender is by itself indicative of prejudice from ineffective assistance of counsel. Juries are empowered to punish such offenders as they deem justified; however, it is the role of the judiciary to ensure the basic fairness of the proceedings leading to such punishment.

raising the issue of appellant's national origin. We sustain appellant's second issue.

We affirm appellant's conviction; however, finding that appellant received ineffective assistance of counsel in the punishment phase, we remand for a new punishment proceeding

J. CHRISTOPHER dissenting.

TRACY CHRISTOPHER, Justice, dissenting.

I agree that appellant's defense counsel did not render ineffective assistance during the guilt/innocence phase of trial, but I differ from the majority in that I would hold that appellant also did not receive ineffective assistance of counsel during the punishment phase of trial. I therefore respectfully dissent.

## I. STANDARD OF REVIEW

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* test, an appellant must prove that his trial counsel's representation was deficient and the deficient performance was so serious that it deprived the appellant of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. To establish both prongs, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id.* at 690–94, 104 S.Ct. at 2066–68. This test is applied to claims arising under the Texas Constitution as well as those arising under the United States Constitution. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986) (en banc). An appellant's failure to satisfy one prong makes it unnecessary for a court to consider the other prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (en banc). When the record is silent as to trial counsel's strategy, we will not conclude that the appellant received ineffective assistance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001)). Usually, however, the lack of a clear record prevents the appellant from meeting the first part of the *Strickland* test because the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim.App.2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App.2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex.Crim. App.1994) (en banc). Moreover, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's ac-

tions or omissions during trial were merely of questionable competence." *Mata,* 226 S.W.3d at 430. Rather, to establish that trial counsel's acts or omissions were outside the range of professional competent assistance, a defendant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App. 1995) (en banc).

## II. PROBATION OFFICER CHARLES RUSS

With regard to Charles Russ, the probation officer who testified during the punishment phase of trial, appellant contends that his trial attorney rendered ineffective assistance, first, by calling Russ as a witness at all, and second, by failing to object to Russ's testimony in specific areas. The majority agrees with both of these arguments, and finds that defense counsel's conduct undermined confidence in the jury's assessment of punishment. Thus, the majority reverses the sentence and remands for a new punishment hearing without reaching appellant's argument that defense counsel rendered ineffective assistance during the punishment phase of trial by introducing evidence that although appellant is a citizen of Mexico, he is a legal resident of the United States.

I respectfully disagree with the majority's conclusions concerning defense counsel's effectiveness in calling Russ as a witness, in failing to object to certain testimony, and in finding this conduct prejudicial to appellant. I therefore would reach appellant's remaining arguments, but based on this record, I would conclude that neither prong of the *Strickland* test has been satisfied.

### A. Calling Probation Officer as a Witness

The majority holds that, notwithstanding the presumption that defense counsel's decision to call Russ as a witness was motivated by sound trial strategy, no competent attorney would have called a probation officer as a witness during the punishment phase of trial. Thus, the majority appears to hold that a defense attorney who calls a probation officer as a witness during the punishment phase of trial delivers ineffective assistance as a matter of law. I respectfully disagree that such conduct falls below an objective standard of reasonable representation as a matter of law or on the facts presented here.

Appellant has not offered and I have not found any authority supporting the majority's conclusion that no competent attorney would call a probation officer as a witness during the punishment phase of trial. To the contrary, the Court of Criminal Appeals has expressly stated that a defendant may call a probation officer during the punishment phase of trial to help establish the defendant's suitability for community supervision. *See Ellison v. State,* 201 S.W.3d 714, 723 (Tex.Crim.App.2006). I further disagree with the majority's reading of *Mares v. State,* 52 S.W.3d 886 (Tex. App.-San Antonio 2001, pet. ref'd). *See ante,* at 385, 386–87. In holding that the defendant in that case received ineffective assistance of counsel, the *Mares* court did not base its holding on defense counsel's conduct in calling a probation officer to testify or even on counsel's failure to object to testimony that was simply adverse; rather, the *Mares* court held that where the sole objective of a punishment hearing was to obtain probation, counsel rendered ineffective assistance by failing to object to an unqualified witness's expert opinion that she would not recommend probation for a person with the defendant's criminal record. *Mares,* 52 S.W.3d at 893. The probation officer in this case was not asked if he would recommend appellant for probation, and he volunteered no such opin-

ion; thus, *Mares* does not apply to the facts presented in this case.

Here, defense counsel relied on Russ's testimony in arguing that the surest way for the jury to protect the community was to recommend probation because a sexual offender on probation is required to successfully complete a treatment program. As defense counsel stated in the opening argument of the punishment phase, "The probation officer is going to come in. . . . He is going to tell you what probation consists of. He's going to tell you-all the conditions and the various punishments; the fact that sex offenders are required to register as a sex offender." Russ then testified that counseling was a condition of probation, and that probationers are required to submit to polygraph exams and unscheduled home visits to police their compliance with conditions imposed for the protection of the community. He further explained that it can take several years to complete counseling, and a probationer who has difficulty reading and writing will require a longer period of counseling to complete the program. Although Russ stated that parolees also are required to attend counseling, he explained that this requirement ends when the period of parole is over, even if the treatment program has not been completed. Moreover, he testified that counseling for imprisoned sex offenders may be available for some of those who volunteer for treatment, but prisoners fear that they will be harmed by other inmates if they are identified as sex offenders.

Defense counsel properly may call a probation officer to offer evidence of the conditions of probation, as was done here. *See McBean v. State,* 167 S.W.3d 334, 340 (Tex.App.-Amarillo 2004, pet. ref'd) (defense counsel did not render ineffective assistance by offering testimony of probation officer regarding conditions of probation and success of sexual offenders on probation, even though the officer further testified without objection that most successful probationers "pled guilty and took responsibility initially"). On this record, I therefore would "conclude that there were legitimate and professionally sound reasons for counsel's conduct" in calling Russ as a witness. *See Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002). Thus, I would hold that the record does not support the claim that defense counsel rendered ineffective assistance simply by calling a probation officer as a witness.

**B. Failure to Object to Testimony Regarding Rehabilitation of Sexual Offenders**

Appellant additionally argues that he received ineffective assistance in the punishment phase of trial because defense counsel failed to object to Russ's testimony emphatically denying that sexual offenders are "ever rehabilitated to the point where the risk is gone." According to appellant, defense counsel should have objected on the grounds that (a) the witness was not qualified to offer such testimony, (b) "the subject matter . . . was unreliable and did not assist the trier of fact,"[1] and (c) the

---

1. Based on the authorities cited, appellant appears to assume for the purpose of this "reliability" argument that Russ is an expert in the rehabilitation of sexual offenders. *See, e.g., Mata v. State,* 46 S.W.3d 902, 908–09 (Tex.Crim.App.2001) ("Evidence Rule 702 provides that an expert witness may testify as to his opinion based on scientific knowledge. . . . A trial court's responsibility under

Rule 702 is to determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury."); *Nenno v. State,* 970 S.W.2d 549, 561 (Tex.Crim.App.1998) (discussing the standard for evaluating scientific evidence), *overruled on other grounds by State v. Terrazas,* 4 S.W.3d 720 (Tex.Crim. App.1999) (en banc); *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App.1992) (en

testimony was unfairly prejudicial. The majority finds this testimony not only unfairly prejudicial, but also highly inflammatory, and concludes that even if Russ were qualified to offer such opinion testimony, defense counsel's conduct in failing to object to it fell below professional standards. In contrast, I would hold that defense counsel's decision to refrain from objecting was reasonable, even if Russ were not qualified to offer such opinion testimony or the evidence was otherwise unreliable.[2]

The decision to refrain from objecting must be evaluated in light of the information available at the time. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex.Crim.App. 1985). Defense counsel is not required to make every sustainable objection, and the concern that "overobjecting" can alienate a jury has been recognized as valid. *See Bollinger v. State*, 224 S.W.3d 768, 781 (Tex.App.-Eastland 2007, pet. ref'd) ("Counsel can be concerned that too many objections will alienate a jury or that an objection might draw unwanted attention to a particular issue."). Moreover, a trial attorney "may strategically decide to allow the other side to introduce otherwise inadmissible evidence because it simply does not hurt the client's case or, in fact, may help it." *McKinny v. State*, 76 S.W.3d 463, 473 (Tex.App.-Houston [1st Dist.] 2002, no pet.). "If a lawyer is reasonably

sure certain evidence will not hurt his client's case, 'it is usually better not to object.'" *Id.* (quoting THOMAS A. MAUET, TRIAL TECHNIQUES, 248–49 (5th ed. 2000)). Finally, we must "'assume a strategic motivation if *any* can possibly be imagined.'" *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim.App.2001) (quoting 3 WAYNE R. LA-FAVE, ET AL., CRIMINAL PROCEDURE § 11.10(c) (2d ed. 1999)) (emphasis added); *see also Ex parte Ellis*, 233 S.W.3d 324, 331 (Tex. Crim.App.2007) ("Although the defensive course chosen by counsel was risky, and perhaps highly undesirable to most criminal defense attorneys, we cannot say that no reasonable trial attorney would pursue such a strategy under the facts of this case.").

In this case, however, a reasonable strategy is not only imaginable but forcefully suggested by defense counsel's closing argument. Russ had testified that one who commits a sexual offense against a child can never be rehabilitated to the point that he no longer has inappropriate sexual thoughts, but such a person can learn skills to help him refrain from inappropriate behavior. In closing argument, defense counsel turned this testimony to appellant's advantage by arguing that because appellant would continue to have inappropriate thoughts after serving any

---

banc) (addressing proof of reliability of novel scientific evidence). Because neither the majority's analysis nor my own is affected by accepting or rejecting this assumption, it is unnecessary to address this argument further.

**2.** The majority concludes that there has been no showing as to whether or not Russ was qualified to offer an expert opinion on the subject. *Ante*, at 385. But if the record were silent on this matter, then under the governing standard of review, I would presume that defense counsel's failure to object was based on sound trial strategy. Absent a contrary showing in the record, I would presume that defense counsel had investigated Russ's quali-

fications before calling him as a witness, was satisfied with Russ's qualifications to offer an expert opinion on the rehabilitation of sex offenders, and reasonably believed that the trial court would not abuse its discretion by overruling an objection based on Russ's qualifications. *See Bone*, 77 S.W.3d at 834–35 & n. 21. I do not believe the record is silent, however. Instead, I read the record as affirmatively demonstrating that Russ was not qualified to offer an expert opinion on the rehabilitation of sex offenders. I nevertheless would conclude that appellant has failed to show that his trial attorney rendered inefficient representation by failing to object to Russ's testimony.

prison term that might be imposed, the only way to protect society was to ensure that appellant received sufficient treatment to acquire the skills necessary to prevent those thoughts from becoming behaviors.

[P]rison isn't going to help society. It isn't going to help Jose Deleon be a better man or a better part of our society.

The evidence you heard from Charlie Russ today was that the type of counseling available in prison is inadequate; it's first come, first served.

It doesn't help if you're trying to treat somebody who is a sex offender to do it in a place where they can't possibly be around any children. It does no good.

It is likely that most people who go to prison at some time emerge from prison. I would submit to you that a man who can't read and write and who's had trouble with English as Mr. Deleon has for 30 years being in this country, with Mr. Deleon it is going to take him more than the three or four years to work through his counseling that it would take an educated person. It is going to take him a while. But that is what will benefit society the most.

You heard Charlie Russ say when people do these things, they have deviant desires deep in their mind. They have thoughts that hopefully the rest of us don't have, and will always have them.

And Mr. Deleon is not an educated man, but there is education available. Mr. Russ can provide that. Dr. Roy Luepnitz can provide that.[3] You heard about that during Mr. Russ'[s] testimony. This type of education is necessary for people who have these type[s] of

problems to make sure it doesn't happen again.

So I would argue to you that based on all of these things that I have discussed—in addition to the fact that what is best for society in this case is to make sure there are not problems down the road—is a strenuous probation with counseling, with the polygraph testing you have heard about. . . .

Based on these things I talked to you about today, the life Mr. Deleon has lived with the exception of this incident, the help that he needs to make sure that this doesn't become a problem in the future and that nobody else is harmed, I would argue to you that probation is the best solution in this case for you-all.

I disagree with the majority's conclusion that by choosing to use Russ's testimony to appellant's advantage rather than simply objecting to it, defense counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Ellis*, 233 S.W.3d at 336 (in evaluating whether counsel may have acted pursuit to a sound trial strategy, "[w]e cannot ignore the fact that counsel's tactics *could* have achieved the desired result") (emphasis added). I instead would hold that defense counsel's conduct fell within objective professional standards.

### C. Failure to Object to Testimony That Appellant Became an "Illegal Alien" Upon Conviction

Appellant also contends he received ineffective assistance because defense counsel allegedly allowed Russ to testify that "if convicted, appellant would immediately become an illegal alien." According to appel-

---

**3.** Russ testified that Dr. Roy Luepnitz provided counseling to sexual offenders on proba-
tion or parole.

lant, such testimony was excludable "because the opinion was incorrect."

Appellant's argument is not supported by citation to the record[4] or to relevant authority.[5] I therefore would hold that this argument is waived. *See* Tex.R.App. P. 38.1(i).[6]

### D. Absence of Prejudice

Because I would conclude that defense counsel's conduct fell within professional standards, I would not reach the question of prejudice. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. I nevertheless address it here to explain my disagreement with the standard of review as applied by the majority.

Under the Sixth Amendment, a criminal defendant has the right, first, to actual representation by counsel, and second, to effective assistance from such counsel. Thus, claims of ineffective assistance of counsel may be considered to be of two corresponding types: those in which counsel, in effect, does not act as the defendant's representative or is prevented from doing so, and those in which counsel represents the defendant, but fails to do so in a professionally competent manner. The Fifth Circuit has frequently referred to this as the distinction between "no defense at all" and "shoddy representation." *See, e.g., Gochicoa v. Johnson,* 238 F.3d 278, 284 (5th Cir.2000); *Jackson v. Johnson,* 150 F.3d 520, 525 (5th Cir.1998); *Childress v. Johnson,* 103 F.3d 1221 (5th Cir.1997). In *Strickland,* the latter are referred to as claims of "actual ineffectiveness." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. The distinction is an important one, because the type of constitutional violation alleged determines whether prejudice is presumed or must be shown.

If the first or "representation" right has been violated, then prejudice is presumed, and the defendant is entitled to have the judgment set aside. "[S]uch circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." *Id.* at 692, 104 S.Ct. at 2067. Violations resulting in presumed prejudice occur when (a) the defendant was actually denied the assistance of counsel at a critical stage in the proceedings,[7] (b) defense counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing" such that the

---

**4.** Russ instead testified, "[I]f I have anybody on my caseload that is not an American citizen, I have to contact immigration and let them know. They will come pick them up in my office and deport them back to Mexico or their homeland." He further agreed with the prosecutor that he did not supervise probationers who were removed from the country. On redirect examination, however, Russ clarified that he was referring to probationers who were in the country illegally and to visitors with expired visas. It is undisputed that appellant is a legal resident and that defense counsel repeatedly drew this fact to the jury's attention.

**5.** In support of this argument, appellant cites only a statute concerning reentry of removed aliens. *See* 8 U.S.C.A. § 1326 (West 2005). Neither party contends that appellant was

ever removed from this country or attempted reentry after removal. The statute therefore has no application here.

**6.** *See also Villarreal v. State,* No. 14-00-00948-CR, 2001 WL 1249329, at *2 (Tex. App.-Houston [14th Dist.] Oct. 18, 2001, pet. ref'd) (not designated for publication) ("[C]ounsel's argument that appellant is an illegal alien and thus likely to be deported after serving his punishment was a plausible trial strategy in trying to induce the jury to impose a shorter sentence because appellant would not thereafter pose a threat to the community.").

**7.** *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657(1984).

defendant was constructively denied the assistance of counsel altogether,[8] or (c) the State engages in various kinds of interference with counsel's assistance.[9] *Id.* at 692, 104 S.Ct. at 2067; *Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex.Crim.App. 2005). On the other hand, if the second right allegedly has been violated, i.e., if the defendant's claim is based on "actual ineffectiveness," then the defendant must "affirmatively prove prejudice" before a reviewing court will set aside the judgment. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.[10] This is true even if multiple errors permeate the proceedings. *See Aldrich v. State*, 296 S.W.3d 225, 233–259 (Tex.App.-Fort Worth 2009, pet. ref'd) (op. on reh'g en banc).

Here, appellant alleges "actual ineffectiveness," and thus, must affirmatively prove prejudice. The majority opines that

"it is difficult to assess exactly what impact the testimony had on the jury," [11] but nevertheless holds that appellant was prejudiced by defense counsel's conduct in calling Russ as a witness and in failing to object to his testimony regarding the rehabilitation of sexual offenders. This conclusion appears to be based primarily on (a) the number of pages used to transcribe Russ's testimony relative to the overall length of the punishment-phase transcript, and (b) the jury's failure to recommend probation as appellant requested.[12] This seems to me an insufficient basis on which to conclude that appellant has made the requisite showing of prejudice, not least because this approach ignores all of the remaining evidence.

As I read the record, there was no reasonable probability that the jury would

---

8. *See Cannon v. State*, 252 S.W.3d 342, 350 (Tex.Crim.App.2008) (op. on reh'g) (presuming prejudice where defense counsel, asserting unpreparedness, refused to participate in trial).

9. *See, e.g., Geders v. United States*, 425 U.S. 80, 91, 96 S.Ct. 1330, 1337, 47 L.Ed.2d 592 (1976) (holding that sequestration order that prevented defendant and attorney from conferring during a 17–hour overnight recess violated Sixth Amendment, and reversing without requiring prejudice to be shown); *Herring v. New York*, 422 U.S. 853, 863–65, 95 S.Ct. 2550, 2555–57, 45 L.Ed.2d 593 (1975) (holding that statute permitting trial judge to deny the right to closing argument violated criminal defendant's Sixth Amendment rights, and reversing without requiring a showing of prejudice).

10. This rule is subject to an exception. A limited presumption of prejudice applies to an "actual ineffectiveness" claim based on a conflict of interest. *See Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). The prejudice presumption applies to such a claim only if defense counsel's performance was adversely affected by his actual representation of con-

flicting interests. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19. No such allegations have been presented here.

11. *Ante*, at 386.

12. The majority states that these "are only additional factors that support the conclusion that the testimony was in fact quite damaging" and that it determined that Russ's testimony was prejudicial based primarily on "the damaging nature of Russ's testimony." *Ante*, at 386 n. 3. But "prejudice" and "damage" mean the same thing. *See* Roget's II: The New Thesaurus 759 (Houghton Mifflin Co. ed., 3d ed. 1995); Webster's Third New International Dictionary 1788 (Philip Babcock Gove ed., 3d ed. 1993). Thus, to say that the testimony was prejudicial—i.e., damaging—because the testimony was damaging—i.e., prejudicial—is circular. The majority simply presumes that the nature of the testimony was prejudicial, but as explained above, no such presumption applies to claims of "actual ineffectiveness" such as those presented here. When this presumption is removed, nothing remains of the majority's argument concerning prejudice other than the comparative length of all of Russ's testimony and the jury's refusal to recommend probation.

have reached a different outcome absent Russ's testimony, because unfortunately, appellant's friends and family made it abundantly clear that if appellant received probation, they would continue to allow him access to young girls. All of appellant's friends and family who testified at the punishment phase of trial expressed disbelief that appellant committed the offense, and even though a condition of probation would be that appellant avoid contact with children, two witnesses testified that they would have no problem in continuing to allow appellant to have contact with the young girls in their families. One of these witnesses lives across the street from appellant and has a three-year-old daughter. The third witness, appellant's wife, testified that appellant still maintained his innocence, and although she was sure she could promise the jury that she would not leave him alone around children ever again, she undermined that testimony by agreeing that she was equally sure that appellant had not been alone with the complainant. She also demonstrated unreliability in accounting for her husband's whereabouts.[13] Finally, it is undisputed that three of appellant's grandchildren—including an infant girl—continued to live with him.

In sum, there was abundant evidence that instead of supporting his efforts to comply with the conditions of probation, appellant's friends and family would continue to allow him access to young girls. On this record, I would find no reasonable probability that the outcome of the punishment phase of trial would have been more favorable to appellant if his attorney had not called Russ as a witness.

## III. NATIONAL ORIGIN

Defense counsel offered evidence during the punishment phase of trial that although appellant is a Mexican citizen, he has been a legal resident of this country since 1985 and would have become an American citizen, but he could not pass the citizenship test because he speaks only Spanish and cannot read and write. Defense counsel referred to this evidence in the opening and closing arguments of the punishment phase of trial, and appellant contends that remarks "that implicated appellant's ethnic, national, and immigration characteristics are strictly prohibited and inadmissible as irrelevant, outside the record, and prejudicial." [14]

Contrary to appellant's argument, such evidence is neither inadmissible per se nor inherently prejudicial, and none of the cases cited by appellant support such a

---

**13.** When asked what appellant did after receiving the guilty verdict, appellant's wife initially stated that the family just sat in a room together the whole time, but when asked if appellant ran some errands, she admitted that he did go to "advise the store" of the outcome of the trial. When asked if appellant went shopping for tires, she admitted this as well and testified that appellant had changed a tire on their daughter's vehicle.

**14.** Appellant also complains of his counsel's failure to object to improper jury argument by the State. According to appellant, "The State argued that upon deportation, defendant would not be subject to probation supervision." He contends that defense counsel rendered ineffective assistance by failing to object to inflammatory and derogatory remarks to the jury about his ethnic, national, and immigration characteristics. These arguments have not been shown to have any factual basis in the record. None of the State's arguments in the punishment phase of trial contained any reference to deportation or to appellant's ethnicity, nationality, or immigration status, and appellant has cited no inflammatory or derogatory references by the prosecutor to appellant's ethnicity, nationality, or immigration status. I therefore would hold this argument to be waived. See TEX.R.APP. P. 38.1(i).

holding.[15] Offering such evidence can form part of a valid trial strategy, and many reasons for choosing to offer such evidence can be imagined. For example, evidence that appellant became a legal resident decades ago supports defense counsel's arguments in favor of probation by showing that appellant is capable of self-policing and has voluntarily and successfully done so in the past. Appellant has a Hispanic name and the jurors saw that the trial was being translated into Spanish for the appellant. Defense counsel may have been concerned that the jurors may have thought that appellant was an illegal alien. The fact that appellant was a legal resident was a positive fact for the appellant. Counsel may also have chosen to use evidence of appellant's long legal residency to demonstrate his strong roots in the community and to undermine arguments or inferences that appellant would ignore registration requirements, violate the conditions of probation, or avoid supervision by returning to his home country. I therefore would hold that defense counsel's conduct fell within objective norms of professional representation.

## CONCLUSION

Although defense counsel has had no opportunity to reply to appellant's allegations of ineffective assistance, it is possible to imagine reasonable trial strategies for the challenged conduct. Moreover, on this record, I would conclude that there is no reasonable probability that the outcome of the punishment phase of trial would have been different if none of the challenged conduct had occurred. The absence of a deficient performance by defense counsel and the absence of prejudice afford independent grounds for affirming the trial court's judgment; thus, for each of these reasons, I respectfully dissent.

---

**15.** Appellant does not contend that defense counsel improperly elicited extraneous-offense evidence, and as previously mentioned, he cites no evidence of improper jury argument. Thus, the cases he cites in support of his "national origin" argument are distinguishable. *See, e.g., Ex parte Walker,* 777 S.W.2d 427, 432 (Tex.Crim.App.1989) (en banc) (eliciting hearsay and extraneous-offense evidence was prejudicial); *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979) (civil case finding no reversible error where attorney argued that lawyer and doctor worked together to increase medical bills); *Tex. Employers' Ins. Ass'n v. Haywood,* 153 Tex. 242, 246, 266 S.W.2d 856, 858–59 (Tex.1954) (workers' compensation case in which court found prejudice where attorney made a blatant plea for jury to decide case based on idea that witnesses' "color alone was ... a badge of perjury"); *Brown v. State,* 974 S.W.2d 289, 293–94 (Tex.App.-San Antonio 1998, pet. ref'd) (op. on reh'g) (eliciting evidence of extraneous drug offenses was prejudicial); *Holiday Inns v. State,* 931 S.W.2d 614, 626–27 (Tex.App.-Amarillo 1996, writ denied) (civil case in which evidence of alien citizenship was held to be not prejudicial); *Riascos v. State,* 792 S.W.2d 754, 758 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd) (concerning improper jury argument); *Matter of Knighton,* 685 S.W.2d 719, 721 (Tex.App.-Amarillo 1984, no writ) (civil case in which it was held that asking a jury to decide custody of children based on wife's religion was prejudicial); *Tex. Employers' Ins. Ass'n v. Jones,* 361 S.W.2d 725, 727 (Tex.Civ.App.-Waco 1962, writ ref'd n.r.e.) (workers' compensation case in which court found harm from improper jury argument based on racial and religious prejudice); *Penate v. Berry,* 348 S.W.2d 167, 168 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.) (civil case in which the court held that it was incurably prejudicial for an attorney to urge the jury to decide a case based on citizenship).