**Affirmed and Memorandum Opinion filed October 27, 2011.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00434-CR

### BLAS REYES, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 52891**

## MEMORANDUM OPINION

Appellant, Blas Reyes, Jr., appeals from his conviction for aggravated robbery. After appellant pleaded guilty and elected to have the trial judge assess punishment, the judge held a punishment hearing and sentenced appellant to 12 years' imprisonment. In a single issue on appeal, appellant contends that he received ineffective assistance of counsel at the punishment hearing. We affirm.

*Background*

Appellant was charged with aggravated robbery and credit card abuse after he stole an elderly woman's purse. Appellant was in a vehicle and the victim was standing

in a parking lot when he grabbed her purse and pulled her against the vehicle causing injuries. Appellant pleaded guilty to the aggravated robbery charge without an agreed recommendation on punishment. At the punishment hearing, the State called no witnesses but offered the police offense report and the presentence investigation report (PSI) into evidence. These exhibits were admitted without objection.

During the defense's case-in-chief, counsel called appellant's mother and father as well as his cousin and appellant himself. Appellant's father, Blas Reyes, Sr., testified that he did not have problems with appellant during most of his adolescence, but appellant began behaving differently in high school. According to Reyes, appellant "fell-in" with a bad group of friends and did not finish high school. Things got better for a little while when appellant got a job, but then he started "hanging out" with a particular friend and trouble began again. Reyes indicated that he later learned that drug use was part of his son's problem.

Reyes further said that on the weekend the offense occurred, appellant "didn't look right" and also had a car accident. Reyes was "absolutely" surprised that appellant had been charged with this crime; he said that appellant had never done anything like this before and had said several times that he was sorry about what happened. If appellant was given probation, Reyes said that appellant could live with Reyes and his wife, appellant's mother, and that they would make sure appellant did all that was required as terms of his probation. Reyes admitted, however, that he had not been able to control appellant when appellant was younger, appellant had been in jail before, and appellant had a drug problem. Reyes further claimed that appellant was "[c]ompletely different" since he had been in jail.

Appellant's mother, Enedina Reyes, also testified about appellant's trouble in school and the fact that after he had gotten a job, everything seemed to be okay for a while. She said that on the weekend the offense occurred, appellant seemed different, as

2

though he had been doing drugs. She also said he had had a problem with his girlfriend around that time. She indicated a desire to help him get help for his drug problem.

Appellants' cousin, Juan Mancillas, testified that he was "[v]ery surprised" to learn that appellant committed the offense charged. Mancillas said that appellant was different since the offense and it "hit [appellant] real hard to find out what he did." Appellant told his cousin that he [appellant] was not in his "right senses" when he committed the offense.

In his testimony, appellant apologized for committing the offense and explained that he had had problems with his girlfriend, got depressed, and turned to drugs for help. He said that he had been attending a "drug class" while in jail but also acknowledged he had previously told his father he would stop taking drugs and had not.

The police offense report contained both the victim's and appellant's versions of events (appellant's version concentrated on his girlfriend problems and drug use as causes). The PSI noted that appellant also had a pending charge for credit card abuse and included a synopsis of the police report. It additionally covered appellant's drug use and prior convictions for DWI and marijuana possession.

In closing argument, the prosecutor pushed for a 20-year sentence. Defense counsel made a plea for probation and placing appellant in a drug rehabilitation facility. Counsel explained that appellant was young, had turned himself in, had already served six months, needed help, and had a loving family to support him. At one point, however, counsel also stated: "He was drugged out, and I admit it's scary. I don't want to go on the streets either, Judge."

Appellant was charged with aggravated robbery as a first degree felony, which carried a punishment range of between five to 99 years' imprisonment or imprisonment for life. *See* Tex. Pen. Code § 12.32(a). The trial court sentenced appellant to 12 years' imprisonment.

*Standards of Review*

In a single issue, appellant contends he received ineffective assistance of counsel during the punishment hearing. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In reviewing an ineffective assistance claim, an appellate court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under the two-pronged *Strickland* test, to demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.* In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). This is particularly true when the alleged deficiencies are matters of omission and not of commission revealed in the record. *Id.* A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was

4

so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *DeLeon*, 322 S.W.3d at 381.

*Analysis*

In his brief, appellant specifically complains about the following conduct of defense counsel: (1) failing to object to admission of the police offense report; (2) eliciting damaging testimony from defense witnesses; and (3) making damaging remarks during closing argument. By rule and by case law, the offense report was most likely excludable as hearsay. *See* Tex. R. Evid. 803(8)(B); *Fischer v. State*, 252 S.W.3d 375, 385 & n.37 (Tex. Crim. App. 2008) ("[A]n offense report, in any form, is not admissible under the hearsay rule; it is specifically barred by Rule 803(8)(B)."). However, the record is silent here as to why defense counsel might have declined to object to admission of this report during the punishment hearing. It is possible that counsel knew or surmised that if he kept out the report, which included the victim's version of events, that the elderly victim herself would have been called to testify and given a potentially more impactful live version of events than the one contained in the report. Further, the admissible PSI contained a summary of the offense report, so at least some part of the information was already being provided. The failure to object to the offense report was not so outrageous that no competent attorney would have acceded to the trial court's ruling. *See Goodspeed*, 187 S.W.3d at 392.

As damaging testimony from his family members, appellant points particularly to statements regarding his drug use and other events occurring the weekend of the offense (*e.g.*, appellant used drugs and wrecked a car). Appellant also highlights statements suggesting that he was difficult to control at times, had troubles in school, and dropped out of school. Again, the record is silent as to defense counsel's strategy. It is likely,

however, that counsel determined that having appellant's family testify was overall a positive strategy, even though some negative testimony would come out as a result. Appellant's family testified that they were surprised he had committed the crime, opined that drugs and girlfriend problems were the likely causes (thus supporting appellant's own version of events), and promised they would be there to help him if he was placed on probation. Defense counsel may have even solicited some of the negative testimony in an effort to demonstrate full disclosure to the judge. This tactic may well have eroded the impact of the prosecutor's cross-examination of those witnesses. Appellant's second argument also does not demonstrate outrageous conduct or deficient performance.

Lastly, appellant emphasizes defense counsel's following remark from closing argument: "He was drugged out, and I admit it's scary. I don't want to go on the streets either, Judge." Appellant construes the comment as "I don't want to go on the streets [with Reyes there] either, Judge." In context, however, the remark appears to be simply an admission that putting appellant back on the streets with no help for his drug problem could be a scary prospect. The comments came in the middle of a plea to take a chance on appellant given his age, family support, and remorse. This plea also involved a recommendation that appellant be assigned to drug rehabilitation as a requirement of his probation. Under the circumstances, the remark was not so outrageous that no competent attorney would have uttered it. Considering the lack of explanation in the record concerning defense counsel's motivation or strategy, appellant has not overcome the strong presumption that counsel's performance was adequate. *See Strickland*, 466 U.S. at 689.

We affirm the trial court's judgment.


/s/      Martha Hill Jamison
         Justice

Panel consists of Justices Seymore, Brown, and Jamison.
Do Not Publish — TEX. R. APP. P. 47.2(b).

6