# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00558-CV

**Albert Medellin, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
### NO. C2010-1082D, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Albert Medellin appeals the district court's order terminating his parental right to his minor child, S. M. In his sole point of error, Medellin argues that he was denied effective assistance of counsel because his counsel failed to object to certain evidence presented by the Texas Department of Family and Protective Services (the "Department"). We affirm the trial court's order terminating Medellin's parental rights.

## BACKGROUND

On June 9, 2010, A. E. gave birth to S. M. by emergency cesarean section after only thirty weeks of gestation due to "elevated risks" to A. E. and S. M.[1] Medellin, S. M.'s father, was in a relationship with A. E. before and after S. M.'s birth. A. E. had several serious medical

---

[1] The facts recited herein are taken from the testimony and evidence admitted at the hearing to terminate Medellin's parental rights.

conditions, including having only one functioning lung and "severe scoliosis"; she was confined to a wheelchair. Both A. E. and S. M. required hospitalization for several weeks after S. M.'s birth. According to Medellin's testimony, A. E. checked herself out of the hospital between six and seven weeks after S. M. was born, though S. M. remained in ICU.

On August 5, 2010, the Department assigned case worker Thomas Bales to investigate a report of neglectful supervision of two-month old S. M. Bales determined that A. E. was hospitalized, comatose, and "might not survive." Bales also determined that Medellin had allegedly assaulted A. E. "to the point where she was—needed to be in ICU at the hospital," that Medellin had been charged with first-degree felony injury to a disabled person with intent to cause serious bodily injury to A. E., and that he was incarcerated at the Comal County Jail. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West 2011). Bales noted that an intake report stated that Medellin "almost killed her."

The following day, the Department took possession of S. M. in accordance with section 262.104 of the Texas Family Code. The Department also filed an original petition for protection of S. M., for conservatorship, and termination of A. E.'s and Medellin's parental rights. The trial court issued an emergency temporary order naming the Department as S. M.'s temporary sole managing conservator and appointed a guardian ad litem for S. M. *See* Tex. Fam. Code Ann. §§ 107.012, 153.371 (West 2008). S. M. was initially placed in a foster home, though she was subsequently placed with her maternal aunt and uncle.

The Department, in accordance with the trial court's order, provided Medellin with a "family service plan" through which Medellin could work toward regaining custody of S. M.

2

*See* Tex. Fam. Code Ann. § 263.106 (West 2008). A. E. died in November of 2010. Medellin remained incarcerated in the Comal County Jail throughout these proceedings. Ultimately, the Department filed a petition to terminate Medellin's parental rights to S. M. The Department alleged, in relevant part, that Medellin:

> (D) knowingly placed or knowingly allowed [S. M.] to remain in conditions or surroundings which endanger the physical or emotional well-being of [S. M.];
>
> (E) engaged in conduct or knowingly placed [S. M.] with persons who engaged in conduct which endangers the physical or emotional well-being of [S. M.];
>
> . . . .
>
> (L) [was] convicted or has been placed on community supervision, including deferred adjudication community supervision for being criminally responsible for the death or serious injury of a child . . . ;
>
> . . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent . . . .

*See* Tex. Fam. Code Ann. § 161.001(1) (West 2008). The Department also asserted that termination of Medellin's parental rights was in S. M.'s best interest. *See id.* § 161.001(2).

A final hearing on the termination of Medellin's parental rights was conducted on May 24, 2011. At the beginning of the proceedings, the trial court, without objection, took judicial notice of the court's file in this case. The Department called Medellin as its first witness. Medellin

3

stated that he had been incarcerated for eleven months, that he did not know how much longer he would remain in jail, that he could not afford to post bond, and that he had been indicted for "injury to a disabled [person] and assault with a deadly weapon and a murder."[2] Furthermore, Medellin admitted that he received the family service plan, but that he had not completed any of its requirements because his jail did not offer the programs required by the service plan. Medellin also testified that he took care of A. E. and S. M. while they were in the hospital. Finally, Medellin expressed that he loved S. M. and that he did not want to lose his parental rights.

The Department then called Bales, who testified about his assignment to this case as case worker and his investigation as outlined above. The Department introduced five photographs of A. E. with visible bruising and swelling on her face and body. Bales testified that these pictures fairly and accurately depicted A. E.'s injuries, and that there was nothing to indicate that A. E. was with anyone besides Medellin when she received these injuries. Furthermore, Bales stated that the Department investigated Medellin's criminal history and that Medellin had been arrested for over seventy-three misdemeanors and nine felonies. Bales testified that the Department mailed Medellin a copy of the family service plan but that Medellin never contacted the Department in response.[3] Finally, he stated that the Department was seeking termination of Medellin's parental rights because it was in the best interest of S. M. because she should "grow up in a stable free [sic], violence free,

---

[2] Medellin's actual indictments are not included in the record.

[3] Bales conceded that he never went to the Comal County Jail to speak with Medellin, even though Bales was supposed to try to make contact. He stated that he had spoken to Medellin's attorneys in the past and the attorneys assured him that Medellin had received the family service plan and that Medellin would sign it.

drug free environment" and that given Medellin's indefinite confinement and inability to maintain stable employment, Medellin could not provide S. M. with a safe home.

Finally, the Department introduced certified copies of nine of Medellin's prior convictions. These included (1) a 1988 conviction for misdemeanor trespassing, (2) a 1989 conviction for injury to a child, (3) a 1989 conviction for possession of marijuana, (4) a 1990 conviction for burglary, (5) a 1991 conviction for theft, (6) a 1992 conviction for driving while license suspended, (7) a 1995 conviction for possession of marijuana, (8) a 2005 conviction for burglary, and (9) a 2007 conviction for "bail jumping," i.e., failure to appear on a felony charge.[4]

Medellin called his brother's wife as a character witness. She stated that she had known Medellin for twenty years, and in that time she never observed Medellin behave violently or abuse alcohol or drugs. On cross-examination, she admitted that she was only aware of four of Medellin's prior convictions, that she was not aware of his prior conviction for injury to a child, and that she knew Medellin was currently unemployed and did not own a home. Finally, S. M.'s guardian ad litem called A. E.'s sister to the stand. She stated that she did not visit A. E. frequently, other than when A. E. was in the hospital. However, she stated that the she had never observed Medellin behave violently, that she never observed any bruises on A. E. prior to her final hospitalization, and that A. E. never told her that Medellin was mean or violent.

After the close of evidence, the trial court found that there was clear and convincing evidence to support the Department's four grounds for terminating Medellin's parental rights. The

---

[4] *See* Tex. Penal Code Ann. §§ 22.04, 30.02, 30.05, 31.03, 38.10 (West 2011); Tex. Transp. Code Ann. § 521.457 (West Supp. 2012); Tex. Health & Safety Code Ann. § 481.121(b)(1) (West 2010). We cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

court also found that termination was in the best interest of S. M. Accordingly, the trial court issued an order terminating Medellin's parental right to S. M. This appeal followed. On appeal, Medellin claims that he received ineffective assistance of counsel at the hearing to terminate his parental rights.

## STANDARD OF REVIEW

A parent's statutory right to counsel in a parental-rights termination proceeding includes a guarantee that counsel will perform effectively. *See In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). In reviewing the effectiveness of counsel in a parental-rights proceeding, the Texas Supreme Court has adopted the two-prong test set forth in *Strickland v. Washington*. *See In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, in order to succeed on an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence that (1) his counsel's performance was deficient and (2) the appellant was prejudiced by that deficient performance. *See id.* (citing *Strickland*, 466 U.S. at 687). It is Medellin's duty to bring forth a record which affirmatively demonstrates that his counsel was ineffective. *See In re M.S.*, 115 S.W.3d at 545–46; *Mallet v. State*, 65 S.W.3d 59, 53 (Tex. Crim. App. 2001).

Our review of counsel's performance must be highly deferential; we presume that counsel makes all significant decisions in the exercise of reasonable judgment. *In re J. O. A.*, 283 S.W.3d 336, 343 (Tex. 2009). Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based upon prevailing professional norms. *See id.*; *Strickland*, 466 U.S. at 689. Effectiveness of counsel usually cannot be adequately examined based on the record from the trial court in a direct appeal; this type of record is best developed on a motion for new trial. *See*

6

*Schwertner v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00347-CV, 2001 Tex. App. LEXIS 8654, at *6–7 (Tex. App.—Austin Oct. 25, 2011, no pet.) (mem. op., not designated for publication). Without a record, finding counsel constitutionally deficient would require us to assume that there was no sound trial strategy, which we are not permitted to do unless the counsel's decision was "so outrageous that no competent attorney would have engaged in it." *See id.* (internal citations omitted).

Furthermore, an appellant must demonstrate that he was prejudiced by his counsel's deficient performance. In order to demonstrate prejudice, the appellant must show there is a reasonable probability that, but for his counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine our confidence in the outcome of the proceedings. *Id.* at 687.

**DISCUSSION**

In his sole issue on appeal, Medellin claims he received ineffective assistance of counsel because his counsel failed to object to the various portions of the Department's case which Medellin claims were inadmissible. Specifically, Medellin asserts that his trial counsel failed to properly object to (1) hearsay statements within Bales's testimony, (2) the admission of photographs depicting A. E.'s injuries, and (3) the certified copies of Medellin's prior convictions.

Medellin did not file a motion for new trial in this case, and his counsel was not given an opportunity to explain his conduct. Therefore, we will not find Medellin's counsel to be deficient unless his conduct was "so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440. Effectiveness is judged by the "totality of the representation," rather than

7

by an isolated act or omission. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). However, given that Medellin's claims of deficiency involve distinct evidentiary issues, we will discuss each alleged instance of ineffectiveness separately, and then determine whether counsel's overall representation was ineffective.

**Bales's testimony**

At the termination hearing, Bales testified about his investigation and subsequent removal of S. M. as outlined above. This testimony included several references to what the Department learned about Medellin's alleged assault of A. E., which likely was based on information obtained from hospital staff and law enforcement. Medellin asserts that Bales's testimony included inadmissible hearsay statements about (1) what others told him about Medellin's alleged assault of A. E., (2) what others told him about the police investigation of the alleged assault, (3) what a criminal history report stated about Medellin's prior arrests, and (4) what a police report stated about the condition of Medellin's home after the alleged assault. *See* Tex. R. Evid. 802 (excluding hearsay that does not fall within statutory exception). Therefore, Medellin argues, his trial counsel was deficient for failing to object to Bales's testimony about the Department's investigation.

*Deficient performance*

Assuming without deciding that Bales's testimony contained inadmissible hearsay, Medellin must demonstrate that his counsel's decision not to object to the testimony was not based on sound trial strategy. *See Thompson*, 9 S.W.3d at 814 (concluding that failure to object to hearsay not per se deficient performance); *Everett v. State*, No. 04-03-00709-CR, 2005 Tex. App. LEXIS

8

795, at *19–20 (Tex. App.—San Antonio Feb. 2, 2005, no pet.) (mem. op., not designated for publication) (concluding that counsel's decision not to object to hearsay testimony in order to illicit inconsistencies between witnesses' statements was sound trial strategy). Medellin's counsel could have decided not to object to Bales's testimony for many reasons. *See DeLeon v. State*, 322 S.W.3d 375, 381–82 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting that counsel may have sound trial strategy for not objecting to inadmissible evidence). For example, Medellin's counsel could have chosen not to object to Bales's testimony in the hope of eliciting inconsistent statements. *See Everett*, 2005 Tex. App. LEXIS 795, at *19–20. Given that Medellin has failed to bring forth a record that affirmatively demonstrates his counsel's reasons for not objecting to Bales's testimony, we presume that counsel's conduct was based on sound trial strategy. *See Thompson*, 9 S.W.3d at 814. Therefore, we cannot find that Medellin's counsel was deficient for not objecting to Bales's testimony.

*Prejudice*

Furthermore, if Medellin's counsel was constitutionally deficient for failing to object to Bales's testimony, Medellin must demonstrate that he was prejudiced by this performance. *See Strickland*, 466 U.S. at 694. Specifically, Medellin must show that had his counsel objected to portions of Bales's testimony, and had that testimony been excluded, there is a reasonable probability that his parental rights would not have been terminated. *Id.* To terminate a parent-child relationship, the court must find by clear and convincing evidence that (1) the parent has engaged in conduct set out as a statutory ground for termination and (2) termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); Tex. Fam. Code Ann. § 161.001(1)–(2). In this case, the Department alleged four statutory grounds for terminating Medellin's parental

9

rights. *See* Tex. Fam. Code Ann. § 161.001(1)(D)–(E), (L), (O). Thus, in order to demonstrate prejudice, Medellin must show that had portions of Bales's testimony been excluded, there is a reasonable probability that the court would not have found that Medellin engaged in conduct that constituted a statutory ground for termination or that the court would not have found that termination was in S. M.'s best interest.

The Department argued that Medellin's alleged assault of A. E. showed that Medellin created a home environment that exposed S. M. to violence. *See id.* § 161.001(1)(D)–(E). However, the Department also alleged that Medellin had been convicted for an offense involving serious injury to a child, which is a separate statutory ground for terminating Medellin's parental rights. *See id.* § 161.001(1)(L).[5] The trial court found by clear and convincing evidence that Medellin had been convicted of an offense involving serious injury to a child based solely on this conviction. Thus, the record indicates that if Bales had not testified about Medellin's alleged assault of A. E.,

---

[5] In its brief, the Department incorrectly concedes that because Medellin's previous conviction was for bodily injury to a child, but not serious bodily injury to a child, the court could not have found that this was a conviction for an offense involving serious injury to child as required by subsection L. *See* Tex. Penal Code Ann. § 22.04(a)(3) (West 2011); Tex. Fam. Code Ann. § 161.001(1)(L) (West 2011). However, demonstrating "serious injury" to a child under the family code does not necessarily require showing "serious *bodily* injury" as defined in the penal code. *See In re L.S.R.*, 92 S.W.3d 529, 530 (Tex. 2002) (denying petition for review but disavowing suggestion that "molestation of a four-year-old, or indecency with a child, generally, does not cause serious injury" for purposes of subsection L); *C.H. v. Texas Dep't of Family & Protective Servs.*, Nos. 01-11-00385-CV, 01-11-454-CV, & No.01-11-00455-CV, 2012 Tex. App. LEXIS 1382, at *14–16 (Tex. App.—Houston [1st Dist.] Feb. 23, 2012, pet. denied) (mem. op.) (concluding that conviction for bodily injury could constitute offense involving serious injury to child). The indictment for Medellin's injury to a child conviction stated that Medellin hit a child with his fist and kicked him. From this information, the trial court could reasonably have concluded that Medellin had been convicted of an offense that involved serious injury to a child. *See* Tex. Fam. Code Ann. § 161.001(1)(L).

the trial court still would have found that Medellin engaged in conduct which constituted a separate statutory ground for termination. *See id.*[6] Similarly, the record does not show a reasonable probability that had Bales not testified about the alleged assault, the trial court would not have found that termination was in S. M.'s best interest. *See id.* § 161.001(2). Therefore, we cannot conclude that had Bales not testified about the alleged assault, there is a reasonable probability that the trial court would not have terminated Medellin's parental rights. Thus, Medellin has not shown that he was prejudiced by his counsel's failure to object to Bales's testimony.

**Photographs of A. E.'s injuries**

Medellin asserts that his counsel was deficient for failing to object to the Department's admission of photographs showing A. E.'s injuries while she was hospitalized. During Bales's testimony, the Department showed Bales six photographs that depicted a woman in a hospital bed, with a breathing tube, and visible bruising around her left eye and both arms. In a fairly brief exchange, the Department asked Bales if he recognized the photographs, and Bales stated that he did. The Department then asked if the photographs "fairly and accurately depict the injuries that [A. E.] suffered," and Bales again answered "yes." The Department then admitted the photographs into evidence without objection.

---

[6] Furthermore, there is compelling evidence that Medellin engaged in a course of conduct that endangered S. M.'s physical and emotional well-being, given that he was currently confined on an outstanding murder charge and his nine previous convictions. *See In re J.T.G.*, 121 S.W.3d 117, 133 (Tex. App.—Fort Worth, 2003, no pet.) ("Evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child is relevant to the issue of whether a parent engaged in course of conduct that endangered the child's well-being."). This could have provided another ground to terminate Medellin's parental rights, regardless of Bales's testimony about Medellin's alleged assault of A. E. *See* Tex. Family Code § 161.001(E).

11

Medellin asserts that the Department failed to lay the proper foundation for the admission of the photographs, given that Bales's testimony did not establish when the pictures were taken, who took the pictures, and whether the woman depicted in the photographs actually was A. E. Furthermore, Medellin claims that the photographs were more prejudicial than probative, and that they were not properly authenticated under the rules of evidence. *See* Tex. R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."), 901 (requiring authentication of evidence). Therefore, Medellin argues, his counsel was deficient for failing to object to the admission of the photographs on these bases.

However, the record fails to affirmatively demonstrate that any of these potential objections would have been successful, or if successful, would have resulted in the exclusion of the photographs. *See Holland v. State*, 761 S.W.2d 307, 318–19 (Tex. Crim. App. 1988) ("[T]rial counsel is under no obligation to do what would amount to a futile act."). Had Medellin's counsel objected to a lack of proper foundation, there is nothing to indicate that the Department could not have provided sufficient foundation by asking Bales if the photographs accurately depicted A. E.'s injuries while she was hospitalized shortly after the alleged assault. *See id.*; *Darnell v. State*, No. 14-11-00437-CR, 2012 Tex. App. LEXIS 1512, at *3–5 (Tex. App.—Houston [14th Dist.] Feb. 28, 2012, no pet.) (mem. op., not designated for publication) (concluding that failure to object to lack of foundation not ineffective unless record shows State would not be able to lay proper foundation). Similarly, there is nothing to indicate that the trial court would have excluded the

12

photographs as unduly prejudicial or insufficiently authenticated.[7] Therefore, Medellin has failed to affirmatively demonstrate in the record that, had his counsel objected, the photographs would have been excluded. Given that counsel is under no obligation to make a futile objection, we cannot find that Medellin's counsel was deficient for failing to object to the admission of these photographs. *See Holland*, 61 S.W.2d at 318–19.

**Certified copies of Medellin's prior convictions**

The final objection Medellin claims his counsel should have made was to the admission of certified copies of nine of Medellin's prior convictions. As outlined above, these convictions occurred between 1988 and 2005, and include a conviction for injury to a child, two convictions for possession of marijuana, and a recent conviction for burglary. Medellin asserts that these convictions are irrelevant to the issue of whether he endangered S. M., given that all the convictions occurred before S. M. was born, many of them occurred decades before the hearing to terminate his parental rights, and most were for non-violent offenses. Therefore, Medellin claims, his trial counsel was deficient for failing to object to the admission of these convictions.

"Evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child is relevant to the issue of whether a parent engaged in course of conduct that endangered the child's well-being." *In re J.T.G.*, 121 S.W.3d 117, 133 (Tex. App.—Fort Worth, 2003, no pet.)

---

[7] *See Ex parte Lane*, 303 S.W.3d 702, 710 (Tex. Crim. App. 2009) (noting that evidence rarely excluded as prejudicial when gives "'context of offense'") (quoting *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986)); *Wood v. State*, 299 S.W.3d 200, 214–15 (Tex. App.—Austin 2009, pet. ref'd) (noting that photograph sufficiently authenticated when medical examiner testified accurately depicted injuries).

(citing *In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.—San Antonio 2000, no pet.)). Medellin's convictions, taken in isolation, could arguably be irrelevant. However, Medellin's criminal history as a whole shows that, for nearly twenty years, Medellin has been convicted of a criminal offense once every two years, on average. While not all of these convictions were for serious offenses, the series of convictions, taken in connection with his current outstanding charges for murder and aggravated assault, are relevant to whether Medellin has engaged in a course of conduct that endangers S. M.'s emotional and physical well-being. *See id.* Thus, Medellin's counsel could reasonably have concluded that objecting to the admission of prior convictions would have been futile. Therefore, we cannot conclude that counsel was deficient for failing to make this objection. *See Holland*, 61 S.W.2d at 318–19 (noting that counsel not required to make futile motion).

Therefore, Medellin has failed to bring forth a record which affirmatively demonstrates that he received ineffective assistance of counsel. Medellin's counsel was not afforded the opportunity to explain his conduct, and based on this record, we cannot say that his counsel's performance was deficient. *See Garcia*, 57 S.W.3d at 440. Furthermore, to the extent that counsel's performance was arguably deficient, Medellin has failed to show that he was prejudiced by this performance. Thus, we cannot conclude that Medellin received ineffective assistance of counsel. Medellin's sole point of error is overruled.

## CONCLUSION

We affirm the trial court's order.

_____

                    Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed:   September 26, 2012

15