**Affirmed and Memorandum Opinion filed December 6, 2012.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-11-00534-CR

**JASON HARRISON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1268481**

## MEMORANDUM OPINION

Appellant Jason Harrison was convicted of the offense of felon in possession of a weapon, and asks us to reverse his conviction on the ground that he received ineffective assistance of counsel. Because appellant has not shown entitlement to this relief, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for the felony charge of felon in possession of a firearm. At his bench trial, Officer Valle, an officer with the Houston Police Department (H.P.D.),

testified that he and his partner were traveling northbound on Martin Luther King Drive on June 26, 2010, when the driver of a black Impala pulled out from a gas station and failed to yield to the officer's vehicle, so that Valle's partner had to slam on the brakes to avoid a collision. When the Impala reached a red light on Reed Road, the driver turned right without signaling or coming to a complete stop. Valle testified that when he and his partner turned on the patrol car's emergency lights and siren, the Impala accelerated to between 65 to 70 miles per hour on the residential roadway while failing to maintain a single lane of traffic. At this point, Valle advised the dispatcher that he was pursuing a vehicle. After approximately three-quarters of a mile, the Impala came to a stop, and according to Valle, appellant opened the car door and put one foot or both feet on the ground, and police detained him upon his exit from the vehicle.

Valle asked appellant why he had been driving in this manner; appellant replied, "I'm not trying to go back to jail." Valle asked appellant if he had anything illegal in the vehicle, and appellant responded, "This is my mama's car. A gun is under the seat." From where he was standing, Valle saw the pistol protruding from under the driver's seat. Valle retrieved and secured the gun, and then placed appellant under arrest. When appellant's mother later arrived on the scene, the Impala was released to her.

At trial, Sergeant R.C. Speckman, an H.P.D. pursuit supervisor, testified that he responded to a dispatch call from Valle regarding the pursuit and arrived at the scene about five to ten minutes later. When he arrived on the scene, appellant's vehicle was stopped in the middle of the road and two police cars had surrounded it in a felony traffic stop position.[1]

At trial, appellant's mother testified that she always has a gun with her whenever she travels in her car, and on this occasion, she loaned her car to appellant, but did not tell him there was a weapon in it. Appellant's trial counsel asked appellant's mother, "To

---

[1] Speckman testified that the H.P.D. protocol for a felony traffic stop involves the primary unit positioning itself on the driver's side of the stopped vehicle to cover the driver and any secondary unit parking the responding vehicle on the passenger side to cover any passengers.

your knowledge, . . . would [appellant] know what's in your car?"  She answered, "No."  On cross-examination, the State elicited testimony from appellant's mother that this was the third time that appellant had been arrested for possession of a firearm while driving his mother's Impala, and in all three instances, appellant's mother had said that the gun was hers.  She further agreed that appellant knows she keeps one gun in the house and one in her car.

The trial court found appellant guilty and assessed punishment at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division.  Appellant filed a motion for new trial, but he did not allege ineffective assistance of counsel, and the motion was overruled by operation of law.

In two issues presented for our review, appellant argues that he received ineffective assistance because his trial counsel (1) allowed appellant's statements concerning the weapon to be admitted and (2) allowed the door to be opened, during his mother's testimony, to prior incidents concerning appellant, the same vehicle, and the same weapon.

## I.  STANDARD OF REVIEW

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the *Strickland* test, an appellant must prove that his trial counsel's representation was deficient and the deficient performance was so serious that it deprived the appellant of a fair trial.  *Id.* at 687.  To establish both prongs, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms, and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different.  *Id.* at 688, 694.  An appellant's failure to satisfy one prong makes it unnecessary for a court to consider the other prong.  *Id.* at 697.

Whether the *Strickland* standard has been met is to be judged by the totality of the representation rather than by isolated acts or omissions of counsel.  *Rodriguez v. State*,

899 S.W.2d 658, 665 (Tex. Crim. App. 1995). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Moreover, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). Rather, to establish that counsel's acts or omissions were outside the range of professionally competent assistance, an appellant must show that the errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and we will sustain allegations of ineffectiveness only if they are firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see Mata*, 226 S.W.3d at 430 ("[T]he record must affirmatively demonstrate trial counsel's alleged ineffectiveness."). Appellant has the burden to rebut this presumption by presenting evidence illustrating why trial counsel acted in the way that he did. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of evidence regarding counsel's reasons for the challenged conduct, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). "In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). But, "this is a difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* Outside of

that rare case, however, when the record is silent as to trial counsel's strategy, an appellant fails to meet his burden under the first prong of *Strickland*. *Id.* at 143–44.

## II. ANALYSIS

### A. Appellant's statements to the police

In his first issue, appellant argues that he received ineffective assistance of counsel because his trial attorney failed to secure a ruling on a pre-trial motion to suppress statements made by appellant during police questioning, and failed to object to the admission at trial of evidence concerning these statements during Valle's testimony. Appellant contends that these statements were clearly inadmissible pursuant to article 38.22, section 3(a), of the Texas Code of Criminal Procedure because they were elicited by custodial interrogation, even though his rights had not been read to him as required, and that his trial attorney's failure to object to their admission and to obtain a ruling on such objection could not be supported by any reasonable trial strategy.

To satisfy the *Strickland* test and prevail on an ineffective-assistance claim premised on counsel's failure with regard to a motion to suppress, "an appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction." *See Wert v. State*, No. 14-11-01062-CR, —S.W.3d—, 2012 WL 4829803, at *3 (Tex. App.—Houston [14th Dist.] Oct. 11, 2012, no. pet.) (noting that trial counsel is not required to engage in futile motions). For an appellant to succeed on an ineffective-assistance claim premised on the failure to object, he must demonstrate that if trial counsel had objected, the trial court would have erred in overruling the objection. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997) (citing *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)), *pet. dism'd, improvidently granted*, 991 S.W.2d 803 (Tex. Crim. App. 1998). "Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel."

*Id.* (citing *Cooper v. State*, 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd)).

Article 38.22, consistent with *Miranda v. Arizona*, 384 U.S. 436 (1966), prohibits the use of an oral statement of an accused made as a result of custodial interrogation unless an accurate electronic recording is made of the statement, statutory warnings are given, and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warnings. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a) (West 2012). *Miranda* and article 38.22 apply only to custodial interrogation. *Id.* § 5; *Miranda*, 384 U.S. at 444; *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996).

A person is "in custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). A person held for investigative detention is not "in custody." *See id.* at 255. An investigative detention is a temporary investigation narrowly confined to ascertaining a person's identity or maintaining the status quo while officers acquire additional information. *Dean v. State*, 938 S.W.2d 764, 768 (Tex. App.—Houston [14th Dist.] 1997, no writ). A custodial arrest, on the other hand, is the significant restriction or restraint of a person's freedom of movement. *Miranda*, 384 U.S. at 444. The determination of custody is made on an ad hoc basis and depends on the objective circumstances, not on the subjective views harbored by either the questioning officers or the person being questioned. *Dowthitt*, 931 S.W.2d at 254–55.

Police conduct may transform a non-custodial interrogation into a custodial interrogation. *See id.* at 255–57. The Court of Criminal Appeals has found at least four general situations where an investigative detention may evolve into custody for purposes of *Miranda* and article 38.22: (1) the suspect is physically deprived of his freedom of action in any significant way, (2) a law enforcement officer tells the suspect he is not free to leave, (3) law enforcement officers create a situation that would lead a reasonable

6

person to believe his freedom of movement has been significantly restricted, and (4) there is probable cause to arrest the suspect and officers do not tell the suspect he is free to leave. *State v. Ortiz*, No. PD-1181-11, —S.W.3d—, 2012 WL 5348503, at *5 (Tex. Crim. App. Oct. 31, 2012) (citing *Dowthitt*, 931 S.W.2d at 255).

### 1. Circumstances of appellant's detention

Here, Valle testified that after he observed appellant commit three moving traffic violations, he initiated his emergency lights and siren to conduct a traffic stop. At that time, appellant failed to immediately stop and pull over, and instead led police on a three-quarter-mile pursuit at 65 to 70 miles per hour on a residential roadway while failing to maintain a single lane of traffic. Because appellant failed to stop immediately, Valle called dispatch about the pursuit. Valle also indicated that when appellant finally stopped, he opened the door and was beginning to step out of the car. At that point, Valle and his partner approached the vehicle to detain appellant and instructed him to exit the vehicle. Once appellant was detained, Valle asked him why he was driving in this manner. After appellant responded that he was not trying to go back to jail, Valle asked him whether there was anything illegal in the vehicle. Appellant responded that the vehicle was his mother's, and there was a gun under the seat. Valle looked in the vehicle, saw the firearm protruding from underneath the driver's seat, retrieved and secured the pistol, and then placed appellant under arrest.

In addition, Speckman testified that he responded to Valle's dispatch call and arrived at the scene about five to ten minutes later. When Speckman arrived on the scene, the black Impala was still in the center of the road and police vehicles were aligned in a felony traffic stop position. Speckman described that a felony stop involves positioning police vehicles to provide for cover in case of a threat. Also, when Speckman arrived, appellant already was in the police vehicle. Speckman testified that the chase had been brief and "they had him in custody relatively quick." Further, two defense witnesses testified that they observed officers approach appellant's vehicle with drawn

7

guns and heard an officer tell appellant to get out of the car. A third defense witness testified that he observed police tell appellant to get out of the car, and when he exited, an officer put appellant up against the car and turned him around.

## 2. *Dowthitt* factors

Appellant does not specifically identify which *Dowthitt* situation, if any, applies here.[2] Applying the appropriate factors,[3] we conclude that appellant was not in custody at the time he made the statements.

### a) *Significant deprivation of freedom*

In the first and third *Dowthitt* situations, an investigative detention can evolve into custody if officers physically deprive a person of significant freedom of movement, or create a situation in which a reasonable person would believe he is deprived of significant freedom of movement. 931 S.W.2d at 255. To constitute custody in either of these situations, the restriction of a suspect's freedom of movement must amount to the degree associated with an arrest, as opposed to an investigative detention. *Id.* This is because both an investigative detention and arrest involve a "restraint of liberty," but a non-custodial, investigative detention does not implicate a suspect's Fifth Amendment right against self-incrimination. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon: (1) the length of the detention, (2) the amount of force employed, and (3) whether the officer actually conducts an investigation. *Id.* (citing *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd)). Officers may use such force as is reasonably necessary under the circumstances to effect the goal of such a detention: investigation, maintenance of the

---

[2] In support, appellant cites one case, *Nguyen v. State*, 292 S.W.3d 671 (Tex. Crim. App. 2009), which is distinguishable. There, the suspect was in custody for purposes of article 38.22 because he made his incriminating statements after the police already had formally arrested him. *Id.* at 677.

[3] There is no evidence that police told appellant he was not free to leave, which would implicate the second *Dowthitt* situation.

8

status quo, or officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

The reasonableness of an officer's use of force during an investigative detention depends on factors such as the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect, the officer's opinion, and whether the officer actually conducted an investigation after seizing the suspect. *Mount*, 217 S.W.3d at 725. "[A]llowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances." *Rhodes*, 945 S.W.2d at 118. In some situations, an officer may reasonably draw a weapon, handcuff a suspect, or place a suspect in a patrol car to conduct an investigative detention; the use of such force does not necessarily transform the investigative detention into custody. *See, e.g., Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (handcuffing and placing suspect in back of patrol car was reasonable during investigative detention in light of early-morning report of gunfire in the area, suspicious behavior by detainee, and fact that officer was alone with suspect); *Rhodes*, 945 S.W.2d at 117–18 (handcuffing was reasonable during investigative detention after high-speed chase in light of suspects' attempted flight, darkness, high-crime location, and fact that officer was left alone with one suspect while his partner chased the other); *Mount*, 217 S.W.3d at 725–27 (initial drawing of weapons on appellant for routine safety during felony stop of a suspected stolen vehicle before conducting temporary investigation was reasonable during investigative detention).

Here, the length of appellant's detention was relatively short. Based on Valle's testimony, it did not take him long to ask appellant why he was driving in this manner and whether there was anything illegal in the car, nor did it take him long to then spot, retrieve, and secure the pistol. After that, Valle formally placed appellant under arrest. This is consistent with Speckman's testimony that police had appellant in custody "relatively quick" and that by the time he arrived at the scene five to ten minutes after Valle called dispatch, appellant was already in the police vehicle under formal arrest.

9

Although there is evidence that police employed force here, initially approaching the vehicle with weapons drawn and restraining appellant after he exited the vehicle was reasonably necessary under these circumstances involving a high-speed pursuit and a felony traffic stop in a residential area. Facing the possibility that appellant posed a threat, the officers briefly detained him to safely investigate the situation while maintaining the status quo. Moreover, the evidence does not indicate that appellant was handcuffed or placed in the patrol car during the time Valle conducted his brief investigation. Based on these facts, the officers' restriction of appellant's freedom was consistent with an investigative detention, and appellant was not in custody according to the first or third *Dowthitt* situation.

### b) *Probable cause manifested to suspect*

Nor was appellant in custody according to the fourth *Dowthitt* situation. Custody arises under the fourth *Dowthitt* situation when officers: (1) have probable cause to arrest a suspect, (2) manifest their knowledge of probable cause to the suspect, and (3) do not tell the suspect that he is free to leave. 931 S.W.2d at 255. Manifestation of probable cause can occur if information sustaining the probable cause is related by the officers to the suspect, or by the suspect to the officers. *Id.* However, this situation will not automatically establish custody; custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

Here, at the time Valle conducted his brief questioning in conjunction with the felony traffic stop, police did not have probable cause for arresting appellant for possession of a firearm. Valle's initial inquiry concerned why appellant had committed multiple moving violations and evaded the traffic stop. Logically, after appellant answered that he was not trying to go back to jail, Valle then pursued whether there was anything illegal in the car. These questions did not manifest probable cause for possession of a firearm, but rather suggested that Valle was still investigating the

10

situation. Probable cause for appellant's possession of a firearm did not arise until *after* appellant told Valle there was a gun under the seat. Based on these facts, the officers' actions did not implicate, and appellant was not in custody according to, the fourth *Dowthitt* situation.

Therefore, having found that no *Dowthitt* situation applies here, we conclude that appellant has not shown by a preponderance of the evidence that a motion to suppress his oral statements would have been granted. Thus, appellant has failed to show deficient performance with regard to trial counsel's failure to obtain a ruling on the motion to suppress. Appellant likewise has not demonstrated that if counsel had objected to these same statements at trial, the trial court would have erred in overruling the objection. Thus, appellant also has failed to show deficient performance with regard to the failure to object. *See Wert*, 2012 WL 4829803, at *3–4 (addressing appellant's complaints that trial counsel failed to file a motion to suppress or object to admissibility of appellant's confession pursuant to *Miranda* in single issue).

Further, an attorney is not necessarily ineffective for failing to pursue a ruling on a motion to suppress or to object to inadmissible evidence. *See DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("[E]ven assuming that appellant is correct regarding the admissibility of this evidence, the record is silent as to why counsel did not object."). Because the record is silent as to the reasons for trial counsel's failures, appellant has failed to rebut the presumption that counsel's actions resulted from reasonable strategy. *See Aldaba v. State*, No. 14-08-00417-CR, — S.W.3d—, 2009 WL 1057685, at *6–7 (Tex. App.—Houston [14th Dist.] Apr. 16, 2009, pet. ref'd) (overruling ineffectiveness claim where trial counsel failed to obtain ruling on motion to suppress and to object to appellant's statement on article 38.22 grounds, but record was silent as to trial counsel's reasons for conduct); *Perez v. State*, 56 S.W.3d 727, 731–32 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (same where record was silent as to why trial counsel only objected to appellant's statement on constitutional, and not

article 38.22, grounds). Therefore, appellant has not met his burden to show deficient performance, and we overrule his first issue.

## B. Prior incident testimony

In his second issue, appellant argues that his trial attorney rendered ineffective assistance of counsel by asking appellant's mother whether appellant would know what the vehicle contained, thereby opening the door for the State to cross-examine her about appellant's two prior arrests involving the same vehicle and the same gun. Because the record is silent as to trial counsel's reason for the question, we presume that his decision was motivated by sound trial strategy. *See Huerta v. State*, 359 S.W.3d 887, 895 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (presuming that counsel's questioning regarding any gang affiliation of appellant was motivated by sound trial strategy where record was silent).

Therefore, appellant has failed to show deficient performance, and we overrule his second issue.

## III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.
Do Not Publish — TEX. R. APP. P. 47.2(b).

12