**Opinion issued February 18, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-14-01032-CR, 01-14-01033-CR

————————————

**WILLIAM MONTERIAL JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1387546 & 1387547**

---

## MEMORANDUM OPINION

Appellant, William Monterial Jones, was charged with the felony offenses of

aggravated robbery and felon in possession of a weapon.[1]  Appellant pleaded true

---

[1]     *See* TEX. PENAL CODE ANN. §§ 29.02(a)(1), 29.03(a)(2), 46.04(a)(1) (West 2015).

to the enhancement allegations in both cases. Pursuant to a plea bargain, the trial court sentenced appellant to forty years' confinement in each case, with the sentences to run concurrently. In two points of error, appellant contends that (1) the evidence was legally insufficient to support a guilty verdict because the State did not prove the identity of the perpetrator beyond a reasonable doubt, and (2) the trial court erred in admitting the opinion testimony of an investigator regarding appellant's truthfulness. We affirm.

## Background

On the evening of September 23, 2012, Mohammad Aman, the complainant, and Nagy Aly were working at Mo's Food Mart when the store was robbed. Aman, the cashier, testified that a tall black male entered the convenience store, jumped onto the front counter behind the protective glass, shot Aman in the arm, and told him, "Okay. Now you're going to give me the money." Aman testified that the man was wearing a do-rag over his face, a t-shirt, and dark-colored pants. As Aman began to open the cash register, Aly, who had been working in the back of the store, approached the counter with his gun and told the assailant to drop his weapon. Aman testified that Aly shot the robber as he fled the store. Paramedics transported Aman to the hospital where a police officer took his statement. The officer then accompanied Aman to another hospital room to see if he could identify

2

the man there as the robber. Aman told the officer that the man in the room was not the robber.

On the night of the robbery, Aly, the night stocker, heard someone near the cash register demand money from Aman. When Aly approached the front of the store, he saw a man behind the register with Aman. The robber saw Aly's gun and fired a shot at him. Aly then fired six shots at the man as he fled the store. Aly testified that as he was standing at the front door, he saw the robber run into the store's parking lot, fall down, and drop a hat and mask. Aly identified the hat and do-rag shown in State's Exhibits 15 and 16 as the hat and mask he saw the robber drop while fleeing. Aly did not identify the man in the hospital room as the robber.

Deputy Langston Smart, with the Harris County Constable's Office, was dispatched to the convenience store following the robbery. After securing the scene, Deputy Smart collected a baseball cap and do-rag found in the parking lot outside the store. Deputy Smart also interviewed Aman and Aly who told him that the perpetrator was a thin, black male who had worn a do-rag over his face. Although the store had security cameras, they were not working on the night of the robbery.

Investigator Zachary Long, with the Robbery Division of the Harris County Sheriff's Office, was assigned as the lead investigator in the case.[2] Investigator Long went to Northwest Medical Center and interviewed Aman who told him that the robber, a black male, wore dark clothing, a ball cap, and a black cloth covering his face. Investigator Long then interviewed appellant who had been admitted with gunshot wounds to the same hospital. Appellant told him that he had been driving his car, a white Crown Victoria, when another vehicle ran him off the road at Airtex Boulevard near Interstate 45, and that the occupants shot at him while he ran away. He also told Investigator Long that he subsequently returned to his car and drove to his girlfriend's house.

Investigator Long testified that, based on his years of experience, appellant's version of events, and the fact that appellant arrived at the hospital dressed only in a t-shirt, white boxer shorts, and socks, he did not find appellant's statement credible. Investigator Long testified that he took Aman into appellant's hospital room but that Aman told him appellant was not the robber. Investigator Long stated that Aly likewise did not identify appellant as the robber. Investigator Long also interviewed Dominique Sampson, the person who brought appellant to the hospital. Sampson told Investigator Long that he had received a call from a friend asking him to pick up a friend who had been shot, and that he picked appellant up

[2] At the time of trial, Investigator Long had been in law enforcement for twenty-six years.

4

at a Popeye's Chicken restaurant off of Airtex and took him to the hospital. According to Sampson, appellant did not say anything during the ride to the hospital and only moaned. Investigator Long learned that a 1995 white Crown Victoria was later found abandoned in a moving lane of traffic near Airtex.

Lieutenant Anthony McConnell, with the Crime Scene Unit of the Harris County Sheriff's Office, conducted a gunshot residue test on appellant and obtained a voluntary buccal swab from him for purposes of DNA analysis. The results of the GSR test were negative.

Christy Smejkal, a DNA analyst with the Harris County Institute of Forensic Sciences, compared the DNA profiles from the baseball cap and the do-rag discovered in the store's parking lot to appellant's DNA profile obtained from his buccal swab. She testified that the DNA results from the do-rag revealed a mixture of DNA from two individuals, and that appellant was the major contributor. Smejkal further testified that the DNA profile from the baseball cap was consistent with appellant's DNA profile.

The jury ultimately found appellant guilty of the charged offenses. Appellant pleaded true to two felony enhancement allegations in each case.[3]

---

[3] In cause number 1387546 (aggravated robbery), appellant pleaded true to allegations that he had been previously convicted of robbery in 2003 and felon in possession of a weapon in 2010. In cause number 1387547 (felon in possession of a weapon), appellant pleaded true to allegations that he had been previously

5

Pursuant to a plea bargain, the trial court sentenced appellant to forty years' confinement in each case, with the sentences to run concurrently. This appeal followed.

## Sufficiency of the Evidence

In his first point of error, appellant contends that the evidence identifying him as the perpetrator was legally insufficient to support his convictions for aggravated robbery and felon in possession of a weapon.

### A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jones v. State*, 458 S.W.3d

convicted of burglary of a habitation in 2000 and felon in possession of a weapon in 2010.

6

625, 630 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (noting jury can choose to disbelieve witness even when witness's testimony is uncontradicted) (internal citation omitted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

"[T]he identity of the alleged perpetrator may be proven by circumstantial evidence." *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd). The State may also establish identity by inferences. *See Jones*, 458 S.W.3d at 630 (citing *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd)). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and

independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011). A person commits the offense of aggravated robbery "if he commits robbery . . . and he . . . uses or exhibits a deadly weapon . . . ." *Id.* § 29.03(a)(2). "A person who has been convicted of a felony commits an offense if he possesses a firearm . . . after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony . . . ." *Id.* § 46.04 (West 2011).

## B. Analysis

In his first point of error, appellant contends that the evidence is legally insufficient to support his convictions. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he was the perpetrator because (1) no witness identified him; (2) the DNA evidence from the baseball cap and do-rag was weak because Aman and Aly's testimony did not connect those items to appellant; and (3) the blood sample recovered from the crime scene excluded appellant, no fingerprints were taken, and the GSR test results were negative.

Here, Aman testified that the robber was wearing a do-rag over his face when he jumped over the counter, shot Aman in the arm, and demanded money. Aly testified that, after he fired his gun at the assailant, he stood at the front door as he watched the assailant run into the store's parking lot, fall down, and drop a hat and mask in the parking lot. When shown State's Exhibits 15 and 16, Aly identified the hat and do-rag shown in the photographs as the hat and mask he saw the robber drop. Smejkal testified that the DNA test results showed that appellant was the major contributor of the DNA found on the do-rag, and that appellant's DNA profile was consistent with the DNA found on the baseball cap. Thus, the State presented evidence connecting appellant to the discarded items found in the store's parking lot following the robbery. Moreover, the defense offered no alternative explanation as to how appellant's DNA ended up on the do-rag and baseball cap found at the crime scene. *See Jones*, 458 S.W.3d at 631–32 (finding evidence identifying defendant as robber sufficient where, among other things, no other testimony established connection between defendant and complainant to explain how complainant's DNA profile ended up on clothing that also contained defendant's DNA profile).

In addition to the DNA evidence, the State presented other circumstantial evidence supporting the jury's verdicts. Aly testified that he shot at the assailant six times while the assailant fled the store. Shortly after the robbery, appellant

9

arrived at a nearby hospital with two gunshot wounds. According to Investigator Long, appellant told him that, after he was carjacked on Airtex Boulevard, he returned to his car and drove to his girlfriend's house. However, the investigation subsequently revealed that the car was towed as an abandoned vehicle from a moving lane of traffic near Airtex. Sampson also told Investigator Long that he picked appellant up at a Popeye's Chicken off of Airtex and took him to the hospital. *See Curry*, 30 S.W.3d at 406 (noting that reviewing courts resolve inconsistencies in evidence in favor of verdict).

In light of the DNA evidence, appellant's gunshot wounds, and the discovery of appellant's abandoned car, it was reasonable for the jury to infer that appellant committed the charged offenses. Viewing the evidence in the light most favorable to the verdict, we hold that the State presented sufficient evidence for a reasonable fact finder to conclude beyond a reasonable doubt that appellant was the armed robber of Mo's Food Mart. We overrule appellant's first point of error.

## Admission of Testimony

In his second point of error, appellant contends that the trial court abused its discretion in allowing Investigator Long's opinion testimony regarding appellant's truthfulness over trial counsel's objection.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

A lay witness may testify in the form of an opinion provided that it is rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue. TEX. R. EVID. 701. Case law recognizes that personal knowledge may derive from experience. *See Ex parte Nailor*, 149 S.W.3d 125, 134 n.41 (Tex. Crim. App. 2004). Thus, a police officer may provide opinion testimony if it is based on his personal observations, training, and experience. *See Fairow v. State*, 943 S.W.2d 895, 898–99 (Tex. Crim. App. 1997); *Austin v. State*, 794 S.W.2d 408, 410–11 (Tex. App.—Austin, pet. ref'd) (police officer permitted to testify that, based on his personal experience, it was his opinion that "Swedish deep muscle rub" was a code for prostitution); *Reece v.*

*State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (based on training and experience, police officer may testify under Rule 701 that defendant's actions are consistent with someone selling cocaine); *Williams v. State*, 826 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (using past experience, police officer was permitted to testify, as either lay witness or expert, that he interpreted defendant's actions to be drug transaction). An opinion is not inadmissible merely because it embraces an ultimate issue. TEX. R. EVID. 704. However, no witness, expert or lay, is competent to voice an opinion about the guilt or innocence of a defendant. *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974); *DeLeon v. State*, 322 S.W.3d 375, 383 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (prosecutor's questions to detective asking who committed offenses and where last offense occurred were improper).

## B. Analysis

When the State questioned Investigator Long about his conversation with appellant in the hospital, Investigator Long testified as follows:

> Q. All right. So, once you received this information of a second robbery, what did you do?
>
> A. Based on the information that [appellant] described to me that had occurred and his actions thereafter, it lead [sic] me to believe that he could have been a possible suspect in the robbery of the Mo's Grocery Store.
>
> Q. And what made you determine —make that determination?

12

[Defense counsel]: Object to speculation, Your Honor.

[The Court]: Overruled.

Q. What made you make that determination?

A. Specifically based on years of experience, the fact that [appellant] was clothed only in a T-shirt, white boxer shorts, and socks. That's how he arrived to the hospital. He had no additional clothing. His statement to me I found unbelievable, untruthful—

[Defense counsel]: I object to that, Your Honor, the officer's opinion as to whether it was a truthful statement or not.

[The Court]: Overruled.

Q. Proceed.

A. When somebody is a victim of a crime and they state to you that somebody fired a gun at them and shot them twice and your action is to then go back, get in your car and drive home, my question would be: Why didn't you call the police? Why didn't you call for an ambulance? There is a hospital within approximately four miles of where this occurred. There are businesses that are open that you could drive to and ask for someone to call 911, somebody you know, call the police, call for an ambulance for me. The fact that he drove home and had his girlfriend call a friend to pick him up and take him to the hospital, it didn't sound credible.

Appellant contends that the trial court erred in permitting Investigator Long to testify regarding appellant's truthfulness. He argues that the testimony, which was not based on Investigator Long's personal knowledge, was improper and should have been excluded. Appellant's argument is without merit. Investigator Long did not testify that he believed appellant was guilty of the charged offenses, or that appellant would be untruthful if called to testify. Rather, he testified that,

13

based on his twenty-six years of experience as a police officer, appellant's explanation of how he got shot did not seem credible because it would be unusual for a victim of a carjacking to act as appellant did (i.e., driving home instead of going to the nearby hospital, not calling police or ambulance or asking someone to call 911, arriving at the hospital in t-shirt, boxer shorts, and socks). *See Reece*, 878 S.W.2d at 325 (based on training and experience, police officer may testify that defendant's actions are consistent with someone selling cocaine). The trial court did not abuse its discretion in allowing Investigator Long's testimony. We overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).