**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed August 4, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00313-CR

---

### ALVIN WESLEY PRINE, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 75th District Court
Liberty County, Texas
Trial Court Cause No. CR30786**

---

## DISSENTING OPINION

We must deny relief on an ineffective-assistance claim on direct appeal if the record does not provide trial counsel's explanations for his conduct, unless there is no possible legitimate trial strategy.[1] This appeal is not one of the rare cases in which

---

[1] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

the issue can be decided on direct appeal in the face of a silent record.[2] The court should not conclude trial counsel lacked any strategic reasoning for the decisions without first hearing trial counsel's explanations. Because the court decides these very serious allegations, finding trial counsel ineffective, without the benefit of counsel's explanations for his actions, I respectfully dissent.

## This Court's Opinion in *DeLeon v. State*

Counsel's reasons for his actions do not appear in the record. The majority holds that under this court's precedent in *DeLeon v. State*, 322 S.W.3d 375 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), we must hold counsel's conduct ineffective without affording counsel the opportunity to explain counsel's strategy because the conduct was ineffective as a matter of law.

In *DeLeon*, a divided panel of this court held that a defense attorney provided ineffective assistance by (1) calling to the witness stand a probation officer who testified that the counseling and treatment sex-offenders received during probation could never erase the risk the sex-offender poses to the community, and (2) failing to object to the probation officer's testimony, which included accounts about other probationers who relapsed and detailed various techniques these relapsed offenders had used to lure children.[3] The *DeLeon* court concluded the probation officer's cross-examination testimony was inadmissible because it was highly inflammatory and arguably outside the probation officers' realm of expertise.[4] Notably, the holding was based on both mistakes, and the finding that there was no reasonable trial strategy that supported counsel's conduct was based on the defense attorney's dual

---

[2] *See Thompson*, 9 S.W.3d at 813 (noting that a reviewing court rarely will be provided the opportunity to make a determination that counsel was ineffective on direct appeal because the record on direct appeal is undeveloped).

[3] *DeLeon*, 322 S.W.3d at 384–85.

[4] *Id.* at 385–86.

decision to (1) call a damaging witness to the stand and (2) then fail to object to the witness's impermissible testimony.[5]  Today's case differs from *DeLeon* in key respects.

## Distinguishing *DeLeon*

The majority asserts that trial counsel's conduct is "more egregious" than that of the defense attorney in *DeLeon* because trial counsel (1) called to the stand witnesses who allegedly provided appellant no real benefit, knowing that they would be impeached on cross-examination, (2) allegedly failed to investigate the probation officer's testimony, and (3) failed to object to the probation officer's testimony that the probation officer did not believe appellant deserved probation.[6]

### *Trial Counsel's Decisions to Call Witnesses*

The decision to call a witness to testify is fraught with risks.  Some witnesses do not perform on the stand the way they did in preparation.  Sometimes witnesses falter under cross-examination.  Sometimes a witness's testimony is something of a mixed bag but key parts are necessary to achieve a particular goal, even though the witness also might give damaging testimony.  Often, the decision to call a particular witness must be made quickly, based on imperfect or incomplete information. Weighing the risks and benefits of presenting a particular witness is exactly the type of strategic decision that ordinarily requires courts to evaluate an attorney's explanations before concluding counsel was ineffective.[7]

---

[5] *Id.* at 386–87.

[6] *See ante* at p. 29.

[7] *See Joseph v. State*, 367 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (noting that the decision to call witnesses is generally a matter of trial strategy).

### 1. Probation Officer

In *DeLeon*, the defense attorney called to the stand a probation officer who discussed the different aspects of probation, including that the sex-offender would receive counseling.[8]  When the prosecutor asked the probation officer about counseling, the probation officer explained that counseling could not eliminate the risk of a particular offender re-offending.[9]  The *DeLeon* court apparently concluded from the probation officer's testimony that the defense attorney had not fully investigated the probation officer's opinion about probation and did not understand the probation officer's views.[10]

Unlike in *DeLeon*, the probation officer in today's case did provide appellant some benefit. The probation officer testified regarding the eligibility for probation and also testified that, based on his conversation with appellant, appellant met the requirements for probation.  The probation officer testified, however, that he had not conducted any independent research into appellant's background and  simply took appellant's word regarding appellant's criminal history.  Though the probation officer did not have personal knowledge that appellant met the eligibility requirements for probation, the probation officer did provide testimony outlining the requirements. That testimony laid the groundwork for appellant to put on other evidence showing he met the requirements for probation.

On cross-examination, the prosecutor attempted to question the probation officer about appellant impregnating a fifteen-year-old, but the trial court did not allow testimony on that matter.  The probation officer did testify, after hearing the details of the offense for which appellant had been convicted, that he did not think

---

[8] *See DeLeon*, 322 S.W.3d at 384–85.

[9] *See id.* at 385.

[10] *See id.* at 386.

4

appellant deserved probation.  But, unlike the probation officer in *DeLeon*, whose views of the efficacy of probation were rooted in the probation officer's experience, the probation officer's opinion regarding appellant's worthiness for probation appears to have changed based on the prosecutor's cross-examination.  Trial counsel sought probation for his client.  The record does not reveal whether counsel had an opportunity to discuss with appellant the potential risks of proving appellant's entitlement to probation, nor does the record reveal whether appellant participated in the decision to establish his eligibility for probation despite potential risks.  In *DeLeon,* the court found no possible strategic reason for calling the probation officer; but, in today's case, trial counsel was faced with a strategic choice about whether the benefits of calling the probation officer outweighed the potential risks.[11]

## 2.  *Appellant's Aunt*

Appellant argues that trial counsel called appellant's sister and aunt to the witness stand knowing that the State likely would elicit testimony from these witnesses that appellant impregnated a fifteen-year-old nearly three decades before, conduct that amounted to statutory rape.[12]  The majority concludes that calling these witnesses was ineffective assistance as a matter of law because trial counsel should have anticipated that the witnesses would give this testimony on cross-examination.[13]  But, calling the witness might have been part of a reasonable trial strategy.[14]

Though appellant's aunt acknowledged that appellant had impregnated a fifteen-year-old, the aunt gave favorable testimony as well.  She testified that appellant was very helpful to his family, that he worked all of his life, and took care

---

[11] *See id.*

[12] *See ante* at p. 29.

[13] *See ante* at pp.28–29.

[14] *See Joseph*, 367 S.W.3d at 744.

of his family until he had a stroke. Appellant's aunt testified that in addition to suffering multiple strokes, appellant had suffered two heart attacks. The aunt pointed out that the daughter appellant produced with the fifteen-year old is now twenty-seven-years old and appellant continues to support the daughter financially. Appellant's aunt testified that she had personal knowledge that appellant had not been convicted of any crimes and therefore was eligible for probation.

### 3. Appellant's Sister

Appellant's sister also acknowledged appellant impregnated the fifteen-year old. And, like the aunt, the sister provided favorable testimony explaining how appellant had been a personal source of support for her during difficult times. The sister testified that she had been raped and impregnated by her father, she had attempted suicide, and would be dead without appellant's help. Appellant's sister testified that the conviction for which the jury was assessing punishment was out of character for appellant, particularly after he supported her through her difficult experience. Appellant's sister implied that intoxication was a factor in appellant's actions in the offense for which he was convicted. The sister testified that appellant did not drink again after that night, noting that appellant suffered a stroke shortly thereafter. Appellant's sister also explained that appellant's health was poor. She relayed that as a result of appellant's heart attacks and strokes, appellant no longer has the use of his hands, that appellant experiences problems with his hip, and that appellant also struggles with memory and speech. When the prosecutor cross-examined appellant's sister about appellant impregnating the fifteen-year old, appellant's sister stated the sexual relationship was consensual even if it had been illegal based on the age difference between appellant and the girl.

The majority concedes that there may have been some strategic purpose in calling appellant's family members, but the majority concludes there could not be any

6

reasonable trial strategy for calling appellant's sister to testify.[15] Although appellant's sister gave damaging testimony, on a silent record, this court does not and cannot know the reason trial counsel decided to call the sister to the stand. *Did trial counsel weigh the damage of the statutory rape committed twenty-seven-years earlier against the impact of the additional testimony the sister provided about appellant's limitations and his past support of family members? Did trial counsel think it was important for the jury to understand the impact and extent of appellant's health problems? Did trial counsel think the sister's opinion that appellant's actions were heavily influenced by his intoxication might sway the jury based on the fact that the sister testified appellant no longer consumes alcohol? Did appellant insist on presenting both character witnesses to the jury? Did trial counsel think the sister would provide a more sympathetic or compelling explanation of appellant's actions? Did counsel make a calculated decision to risk additional testimony about the fifteen-year-old for the chance to present favorable testimony that might not have been available from other sources?*

Unlike in *DeLeon* where the court held there was no possible strategic reason for calling the probation officer to the stand,[16] trial counsel faced a tactical choice about whether to call appellant's aunt and sister to testify. Without a record, this court does not know why trial counsel called appellant's sister to the witness stand. We should not denounce counsel as ineffective without giving counsel an opportunity to explain his actions.

---

[15] *See ante* at pp. 28-30.

[16] *See DeLeon*, 322 S.W.3d at 386.

7

*Alleged Failure to Investigate*

In *DeLeon* this court concluded that trial counsel did not properly investigate the likely substance of the probation officer's opinion.[17] The majority asserts that appellant's trial counsel likewise did not investigate the probation officer's testimony in today's case.[18] The record reveals that the probation officer met with appellant only briefly, but the record does not reveal what steps, if any, trial counsel took to investigate what the probation officer's testimony would be or what knowledge trial counsel may have had based on research or prior dealings with the probation officer. On this record, we do not know whether the probation officer stated he intended to testify in a particular way and changed his testimony at trial or whether trial counsel did not perform a sufficient investigation.

The record reveals that the probation officer did not know some specifics of the particular offense for which appellant had been convicted, but trial counsel has not had the opportunity to explain what he told the probation officer and what he expected the probation officer might say. *Did trial counsel think the probation officer's testimony was necessary, but determined that telling the probation officer details such as the defendant's denial of his guilt, would make it more difficult for appellant to receive probation? Did trial counsel inform the probation officer of those facts and the probation officer forgot? Did trial counsel have reason to believe, based on prior conversations with the probation officer, that those facts would not impact the probation officer's testimony?*

The record does not reveal what counsel thought or reasonably might have believed, but the probation officer's testimony did not conclusively establish that trial counsel did not adequately investigate the probation officer's testimony before trial.

---

[17] *See id.*

[18] *See ante* at p. 29.

The majority might be correct that trial counsel did not investigate the substance of the probation officer's testimony, but, at this juncture, we simply do not know and should not speculate in the face of a silent record.

### *Failure to Object to Evidence*

To hold trial counsel was ineffective because counsel failed to object to evidence, the court must conclude that the evidence was inadmissible.[19] The majority holds that trial counsel was ineffective in failing to object to the probation officer's testimony that, based on his limited interview of appellant, and the few facts of the case given by the State, the probation officer did not think appellant deserved probation.[20] In *DeLeon*, the court concluded that the probation officer's testimony regarding tactics some sex-offenders used to lure children after they relapsed was highly inflammatory and thus inadmissible.[21] In today's case, the majority does not conclude the probation officer's testimony would have been inadmissible.

The probation officer's statement is not inflammatory in the way the probation officer's testimony was in *DeLeon*. Though the majority states that trial counsel was ineffective in failing to object to the probation officer's testimony that appellant did not deserve probation, unlike the court in *DeLeon*, the majority does not explain why this evidence was inadmissible at trial.[22]

---

[19] *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002).

[20] *See ante* at p. 29.

[21] *See DeLeon*, 322 S.W.3d at 385.

[22] *See id.* at 385–86; *see ante* at pp. 29-30.

## CONCLUSION

Today's case differs from *DeLeon*. First, there are possible strategic reasons for calling the witnesses trial counsel chose to call. Second, the record does not reveal that trial counsel did not investigate the probation officer's testimony. Finally, trial counsel was not deficient in failing to object to the probation's officer's testimony. Because the facts are distinguishable from the *DeLeon* facts, and because there are potential explanations for trial counsel's conduct, there is no reason to find trial counsel ineffective as a matter of law without affording trial counsel an opportunity to explain his actions.

/s/    Kem Thompson Frost
       Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise (Boyce, J., majority).

Publish — Tex. R. App. P. 47.2(b).

10